**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FAHD UMAR ABDULMAJID AL SHAREEF, <br> Detainee, Guantánamo Bay Naval Station <br> Guantánamo Bay, Cuba; <br><br> HANI SAEED MOHAMMED BANAN AL-KALF AL-GAMDI, <br><br> Detainee, Guantánamo Bay Naval Station <br> Guantánamo Bay, Cuba; <br><br> HANNAN SAEED MOHAMMED BANAN AL-GAMDI, <br><br> As Next Friend of Hani Saeed Mohammed Banan Al-Kalf Al-Gamdi <br><br>         Petitioners/Plaintiffs, <br><br>         v. <br><br> GEORGE W. BUSH, <br> President of the United States <br> The White House <br> 1600 Pennsylvania Ave., N.W. <br> Washington, D.C.  20500; <br><br> DONALD RUMSFELD, <br> Secretary, United States Department of Defense <br> 1000 Defense Pentagon <br> Washington, D.C.  20301-1000; <br><br> ARMY BRIGADIER GEN. JAY HOOD, <br> Commander, Joint Task Force – GTMO <br> JTF-GTMO <br> APO AE 09360; and <br><br> ARMY COLONEL Mike Bumgarner, <br> Commander, Joint Detention Operations Group. <br> JTF-GTMO <br> APO AE 09360, <br><br>         Respondents/Defendants. | **PETITION FOR WRIT OF HABEAS CORPUS** <br><br> No._____ |

Petitioners Fahd Umar Abdulmajid Al Shareef ("Petitioner Al Shareef") and Hani Saeed Mohammed Banan Al-Kalf Al-Gamdi ("Petitioner Al Gamdi") (collectively "Petitioners"), civilians designated as "enemy combatants," are currently detained, virtually *incommunicado*, by the United States in military custody at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"). Petitioners are being held without basis, without charge, without access to counsel and without being afforded any fair process by which they might challenge their designation and detention, by color and alleged authority of the Executive, and in violation of the Constitution, laws and treaties of the United States as well as customary international law. Accordingly, this Court should issue Writs of Habeas Corpus, and order injunctive and declaratory relief.

## I.
## PARTIES

### Fahd Umar Abdulmajid Al Shareef

1.     Petitioner Al Shareef seeks a Writ of Habeas Corpus. Petitioner Al Shareef is a Saudi Arabian citizen who is presently incarcerated and held in Respondents' unlawful custody at the United States Naval Station at Guantánamo.

2.     Petitioner Al Gamdi seeks a Writ of Habeas Corpus. He acts on his own behalf and through his Next Friend and sister, Hannan Saeed Mohammed Banan Al-Gamdi. Petitioner Al Gamdi is a Saudi Arabian citizen who is presently held in Respondents' unlawful custody at the United States Naval Station at Guantánamo.

### Respondents

3.      Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States Military.  On information and belief, Respondent Bush asserts that he is authorized to detain Detained Petitioners pursuant to his authority as Commander-in-Chief and under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001 ("Military Order") (attached as Exhibit B to the Affidavit of Julia Tarver, Esq. ("Tarver Affidavit")).  President Bush is responsible for the unlawful detention of Detained Petitioners and is sued in his official capacity.

4.      Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense.  Purportedly pursuant to either the Military Order or the President's authority as Commander-in-Chief and under the laws and usages of war, Respondent Rumsfeld has been charged with maintaining the custody and control of Detained Petitioners.  He is sued in his official capacity.

5.      Respondent Brigadier Gen. Jay Hood is the Commander of Joint Task Force-GTMO, the task force running the detention operation at the United States Naval Station, Guantánamo Bay.  He has supervisory responsibility for Detained Petitioners and is sued in his official capacity.

6.      Respondent Army Col. Mike Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where, on information and belief, Detained Petitioners are presently held.  Upon information and belief, he is the immediate custodian responsible for the detention of the Detained Petitioners and is sued in his official capacity.

3

## II.
## JURISDICTION

7.     Petitioners bring this action pursuant to 28 U.S.C. §§ 2241(c)(1) and (c)(3) and

2242, and invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202;

5 U.S.C. § 702; Articles I, II and III of, and the Fifth, Sixth, and Eighth Amendments to, the

United States Constitution.  Because they seek declaratory relief, Petitioners also rely on Fed. R.

Civ. P. 57.

8.     This Court is empowered under 28 U.S.C. § 2241 to grant these Writs of Habeas

Corpus and to entertain the instant Petition.  This Court is further empowered to entertain the

Petition pursuant to the United States Supreme Court's ruling in *Rasul* v. *Bush*, 124 S. Ct. 2686

(2004).  This Court is empowered to declare the rights and other legal relations of the parties

herein by 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and

proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's

jurisdiction.

## III.
## STATEMENT OF FACTS

9.     On information and belief, Petitioners are being held virtually *incommunicado* in

military custody at Camp Delta, at the United States Naval Station at Guantánamo, without basis,

without charge, without access to counsel and without being afforded any fair process by which

they might challenge their designation and detention, and by asserted color and authority of the

Executive, and in violation of the Constitution, laws and treaties of the United States as well as

customary international law.  On information and belief, neither Petitioner has been proven to be,

and they are in fact not, nor ever have been, enemy aliens, lawful or unlawful belligerents,

4

combatants of any kind, or "enemy combatants" who were "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." *See Hamdi* v. *Rumsfeld*, 124 S. Ct. 2633, 2639 (2004).

10.     On information and belief, at the time of their detention, Petitioners were not members of the Taliban Government's armed forces, Al Qaeda, or any other type of terrorist or radical group; nor did they cause or attempt to cause any harm to American personnel or property prior to their detention.  They remain incarcerated at the U.S. Naval Station at Guantánamo, a territory over which the United States exercises exclusive jurisdiction and control.

### The Joint Resolution

11.     In the wake of the attacks on the United States that occurred on September 11, 2001, the United States, at the direction of President Bush, began a military campaign against the Taliban government, then in power in Afghanistan.  On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons."  Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001) ("Joint Resolution").

### The Military Order

12.     On November 13, 2001, Respondent Bush issued an Executive Order authorizing Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has "reason to believe":

   (i)  is or was a member of the organization known as al Qaida;
   (ii)  has engaged in, aided or abetted, or conspired to commit, acts of
      international terrorism, or acts in preparation therefor, that have caused,

> threaten to cause, or have as their aim to cause, injury to or adverse effects
> on the United States, its citizens, national security, foreign policy, or
> economy; or
>
> (iii)    has knowingly harbored one or more individuals described in
> subparagraphs (i) and (ii) . . . .

*See* Military Order. According to the terms of the order, President Bush must make this

determination in writing. *Id*. The Military Order was neither authorized nor directed by

Congress, is beyond the scope of the Joint Resolution of September 18, 2001, and violates the

Constitution, laws and treaties of the United States, and customary international law.

13.    The Military Order vests President Bush with complete discretion to identify

individuals who fall within its purview. It establishes no standards governing the exercise of his

discretion. Once a person has been detained, the Military Order contains no provision for that

person to be notified of the charges he may face. The Military Order authorizes detainees to be

held without charges. It contains no provision for a detainee to be notified of his rights under

domestic and international law, and provides neither the right to counsel nor the right to consular

access. It provides no right to appear before a neutral tribunal to review the legality of a

detainee's continued detention and no provision for appeal to an Article III court. In fact, the

Military Order expressly bars review by any court. The Military Order authorizes indefinite and

unreviewable detention, based on nothing more than President Bush's written determination that

an individual is subject to its terms.

14.    The Military Order was promulgated in the United States and in this judicial

district, and, on information and belief, the decision to incarcerate Petitioners was made by

Respondents in the United States and in this judicial district, the decision to detain Petitioners at

Guantánamo was made in the United States and in this judicial district, and the decision to

continue detaining Petitioners was, and is, being made by Respondents in the United States and
in this judicial district.

16. On information and belief, President Bush has never certified or determined in
any manner, in writing or otherwise, that Petitioners are subject to the Military Order.

16. Petitioners are not properly subject to the Military Order, and, in any event, the
Military Order is unjust, *ultra vires*, and violates the laws, treaties, and Constitution of the
United States. Petitioners are being detained unlawfully purportedly pursuant to President
Bush's authority as Commander-in-Chief or under the laws and usages of war.

### Guantánamo Bay Naval Station

17. On or about January 11, 2002, the United States military began transporting
prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Station at
Guantánamo. In April 2002, all prisoners were transferred to Camp Delta, a more permanent
prison facility at Guantánamo. Offenses committed by both civilians and foreign nationals living
at Guantánamo are brought before United States District Courts, where respondents enjoy the
full panoply of Constitutional rights. Detainees incarcerated at Guantánamo are entitled to test
the legality of their detention in the federal courts. *Rasul* v. *Bush*, 124 S. Ct. 2686 (2004).

18. Petitioners are being held at Guantánamo, in the custody of President Bush and
Respondents Rumsfeld, Hood, and Bumgarner.

### The Conditions of Detention at Guantánamo

19. Since gaining control of Detained Petitioners, the United States military has held
them virtually *incommunicado*. On information and belief, they have been or will be

7

interrogated repeatedly by agents of the United States Departments of Defense and Justice, and

the Central Intelligence Agency, though they have not been charged with any offense, nor have

they been notified of any pending or contemplated charges. On information and belief, they

have made no appearances before either a military or civilian tribunal of any sort, nor have they

been provided counsel or the means to contact counsel, and are being held under conditions that

violate their international and constitutional rights to dignity and freedom from cruel, unusual

and degrading treatment or punishment. On information and belief, they have not been informed

of their rights under domestic or international law. On information and belief, Petitioners have

been forced to provide involuntary statements to Respondents' agents at Guantánamo.

20.     Respondents claim that their conduct was and is authorized by the President's

authority as Commander-in-Chief of the United States Military and/or the Military Order.

Respondents' acts were not, and are not, so authorized, and in fact violated Detained Petitioners'

rights under, *inter alia*, the United States Constitution, the regulations of the United States

Military, the Geneva Conventions, the International Covenant on Civil and Political Rights, the

American Declaration on the Rights and Duties of Man, and customary international law.

21.     On information and belief, Petitioners have been held under conditions that

violate their international and constitutional rights to dignity and freedom from cruel, unusual

and degrading treatment or punishment. Reports of these violations include physical beatings,

sexual torture, psychological abuse, being placed in solitary confinement, denial of exercise;

abusive restraints, including leg-irons; being given an inadequate diet; and being denied contact

visits with families. *See* Amnesty International, *United States of America: Human Dignity

Denied: Torture and Accountability in the 'War on Terror,'* at 22 (Oct. 27, 2004) (available at

http://web.amnesty.org/library/Index/ENGAMR511452004) (last visited Jan. 25, 2005); *see also* Barry C. Scheck, Abuse of Detainees at Guantánamo Bay, The Nat'l Assoc. of Criminal Defense Lawyers Champion, Nov. 2004, at 4-5. Indeed, many of these violations – including isolation for up to 30 days, 28-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror – were actually interrogation techniques <u>approved</u> for use at Guantánamo by the most senior Department of Defense lawyer. *See* Action Memo from William J. Haynes II, General Counsel DOD, to Secretary of Defense (Nov. 27, 2002); *Pentagon Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations,* at 62-65 (Apr. 4, 2003).[1]

22.    On information and belief, Petitioners have been forcibly compelled to violate fundamental tenets of their faith through a deliberate pattern of torture targeted at devout Muslims. *See, e.g., Ex-G.I. Writes About Use of Sex in Guantánamo Interrogations,* Assoc. Press, Jan. 28, 2005 (detailing interrogation tactic of smearing fake menstrual blood by a female interrogator on face of detainee in order to make him feel impure).

23.    On information and belief, Petitioners have been denied adequate medical treatment. *See, e.g.,* Robert Jay Lifton, M.D., *Doctors and Torture,* 5 New Eng. J. Med. 351,

---

[1]    Details of the cruel and degrading conditions suffered by detainees at Guantánamo are set out at length in a statement by several released British detainees. *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantánamo Bay,* 300, *at* http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23july04.pdf) (last visited Jan. 25, 2005). The Department of Defense also informed the Associated Press that a number of interrogators at Guantánamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See Report Details Guantánamo Abuses,* Assoc. Press, Nov. 4, 2004.

415 (2004) (discussing complicity of medical professionals in torture of detainees at Abu Ghraib and Guantánamo).

24.    In published statements, President Bush and Respondent Rumsfeld, and predecessors of Hood and Bumgarner, preceded by Lehnert and Carrico, have proclaimed that the United States may hold Petitioners under these conditions indefinitely. *See, e.g.*, Roland Watson, The Times (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that al-Qaeda prisoners could be held indefinitely at the base. He said that the detention of some would be open-ended as the United States tried to build a case against them."); John Mintz, *Extended Detention In Cuba Mulled*, The Wash. Post, Feb. 13, 2002 ("As the Bush administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantánamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

25.    According to the Department of Defense, detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantánamo indefinitely. *See* Department of Defense Press Background Briefing of July 3, 2003, *at* http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited Jan. 25, 2005).

26.    Petitioners incorporate paragraphs 1 – 24 in each of the below claims for relief as if fully set forth therein.

FIRST CLAIM FOR RELIEF
(DUE PROCESS - FIFTH AMENDMENT
TO THE CONSTITUTION OF THE UNITED STATES
UNLAWFUL DEPRIVATION OF LIBERTY)

27.    Respondents, acting under color of law, have violated and continue to violate, *inter alia*, the Fifth Amendment to the Constitution of the United States. Respondents' actions deny Petitioners the process accorded to persons seized and detained by the United States military in times of armed conflict as established by, *inter alia*, the Uniform Code of Military Justice, Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

28.    To the extent that Petitioners' detention is authorized by the Military Order, that Order violates the Fifth Amendment on its face and as applied to Detained Petitioners, and is, in any event, otherwise unlawful in its entirety.

29.    Accordingly Petitioners are entitled to habeas, declaratory and injunctive relief as well as any other relief the court may deem appropriate.

SECOND CLAIM FOR RELIEF
(DUE PROCESS - FIFTH AMENDMENT
TO THE CONSTITUTION OF THE UNITED STATES
UNLAWFUL CONDITIONS OF CONFINEMENT)

30.    Respondents, acting under color of law, have violated and continue to violate the rights of Petitioners to be free from arbitrary, prolonged, and indefinite detention and unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States by, *inter alia*, detaining him indefinitely in conditions that are an affront to human dignity. On information and belief, Petitioners have been held in conditions of isolation; placed in constant vulnerability to repeated interrogation and

severe beatings; kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; forcibly compelled to violate fundamental tenets of their faith; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

31.    The President's Military Order of November 13, 2001, as applied to Detained Petitioners, violates the Fifth Amendment.

32.    Accordingly, Petitioners are entitled to habeas, declaratory and injunctive relief as well as any other relief the court may deem appropriate.

### THIRD CLAIM FOR RELIEF
### (ARBITRARY DENIAL OF DUE PROCESS - GENEVA CONVENTIONS)

33.    Respondents, acting under color of law, have denied and continue to deny Petitioners the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

34.    Violations of the Geneva Conventions are direct treaty violations, and are also violations of customary international law.

35.     Respondents are liable for this conduct described above directly and in so far as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

36.     Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

FOURTH CLAIM FOR RELIEF
(ARBITRARY DENIAL OF DUE PROCESS – INTERNATIONAL
HUMANITARIAN AND HUMAN RIGHTS LAW)

37.     Respondents have denied and continue to deny Petitioners the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

38.     Because Respondents are detaining Petitioners "under or by color of the authority of the United States" and "in violation the Constitution or laws or treaties of the United States" Petitioners' claims arise under 28 U.S.C. § 2241 and they are entitled to habeas relief as well as any other relief the court may deem appropriate.

39.     Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## FIFTH CLAIM FOR RELIEF
## (VIOLATIONS OF THE LAW OF NATIONS -
## ALIEN TORT CLAIMS ACT)

40.     Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon Petitioners in order to obtain coerced information or confessions from them, punish or intimidate Petitioners, or for other purposes.  On information and belief, Detained Petitioners have been held in conditions of isolation; placed in constant vulnerability to repeated interrogation and severe beatings; kept in cages with no privacy; shackled with heavy chains and irons; placed in solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; forcibly compelled to violate fundamental tenets of their faith; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

41.     The acts described herein had the intent, and the effect, of grossly humiliating and debasing Petitioners, forcing them to act against their will and conscience, inciting fear and anguish, and breaking their physical or moral resistance.

42.     The acts described herein constitute torture; war crimes and/or crimes against humanity, committed in violation of the applicable provisions of the Geneva Conventions and the Additional Protocols thereto; cruel, inhuman or degrading treatment; arbitrary arrest and prolonged arbitrary detention; and enforced disappearances in violation of the law of nations under the Alien Tort Claims Act, 28 U.S.C. § 1350, in that the acts violated customary

international law prohibiting these crimes as reflected, expressed, and defined in multilateral

treaties and other international instruments, international and domestic judicial decisions, and ·

other authorities, including, *inter alia*, Common Article III of the Geneva Conventions,

Additional Protocol II of the Geneva Conventions, the Fourth Geneva Convention, and

Additional Protocol I of the Geneva Conventions.

43.    Respondents are liable for said conduct because they directed, ordered,

confirmed, ratified, and/or conspired together and with others to commit the violations of the law

of nations against Petitioners.

44.    As a result of Respondents' unlawful conduct, Petitioners have been and

are deprived of their freedom, separated from their families, and forced to suffer severe physical

and mental abuse and agony, and are therefore entitled to declaratory and injunctive relief and

such other relief as the court may deem appropriate.

SIXTH CLAIM FOR RELIEF
(UNLAWFUL DETENTION IN VIOLATION OF ARTICLE II OF THE UNITED STATES
CONSTITUTION)

45.    Petitioners are not, nor have they ever been, enemy aliens, lawful or

unlawful belligerents, or combatants of any kind.  The Executive lacks the authority to order or

direct military officials to detain civilians who are seized outside the theater of war or occupied

territory who are not engaged in hostilities against the United States.

46.    By the actions described above, President Bush has exceeded and

continues to exceed the Executive's authority under Article II of the United States Constitution

by authorizing, ordering and directing that military officials seize Detained Petitioners and

15

transfer them to military detention, and by authorizing and ordering their continued military

detention at Guantánamo. All of the Respondents acted and continue to act without lawful

authority by directing, ordering, and/or supervising the seizure and military detention of

Petitioners.

47.    The military seizure and detention of Petitioners by the Respondents is

*ultra vires* and illegal being in violation of Article II of the United States Constitution. To the

extent that the Executive asserts that Detained Petitioners' detention is purportedly authorized by

the Military Order, that Order exceeds the Executive's authority under Article II and is *ultra*

*vires* and void on its face and as applied to Petitioners.

48.    Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive

relief as well as any other relief the court may deem appropriate.

### SEVENTH CLAIM FOR RELIEF
### (VIOLATIONS OF THE ADMINISTRATIVE PROCEDURES ACT)

49.    Respondents have detained Petitioners in violation of Army Regulation

190-8, which prohibits the detention of civilians who were seized away from the field of battle or

outside occupied territory and who were not engaged in combat against the United States. *See,*

Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to

be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized

without further proceedings to determine what acts they have committed and what penalty

should be imposed.").

50.    By arbitrarily and capriciously detaining Petitioners in military custody for

nearly three years in the manner described above; by denying Detained Petitioners the process

16

afforded to persons seized and detained by the U.S. Military in times of armed conflict pursuant to Army Reg. 190-8; and by directing, ordering, conforming, ratifying, or conspiring to torture unlawfully Detained Petitioners in violation of Army Reg. 190-8, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

51.     Accordingly, Petitioners are entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

## IV.
## PRAYER FOR RELIEF

WHEREFORE, for the above stated and other such reasons as may appear to this Court, Petitioners pray for relief as follows:

1.     Designate Hannan Saeed Mohammed Banan Al-Gamdi as Next Friend of Hani Saeed Mohammed Banan Al-Kalf Al-Gamdi.

2.     Order Detained Petitioners released from Respondents' unlawful custody;

3.     Order Respondents to allow counsel to meet and confer with Detained Petitioners in private and unmonitored attorney-client conversations;

4.     Order Respondents to cease all interrogations of Detained Petitioners, direct or indirect, while this litigation is pending;

5.     Order Respondents to cease all acts of torture and abuse of Detained Petitioners;

6.     Order and declare the Military Order of November 13, 2001, *ultra vires* and unlawful in violation of the Fifth Amendment to the United States Constitution; *ultra vires* and unlawful in violation of Article II of the United States Constitution; *ultra vires* and unlawful as a

violation of the Administrative Procedures Act, 5 U.S.C. § 702; and unlawful as a violation of the treaties of the United States and customary international law;

7.    Order and declare that Petitioners are being held in violation of the Fifth Amendment to the United States Constitution; and that the prolonged, indefinite, and restrictive detention of Detained Petitioners is arbitrary and unlawful, a deprivation of liberty without due process in violation of the Fifth Amendment to the United States Constitution, and in violation of the treaties of the United States and customary international law;

8.    Order and declare that Petitioners are being held in violation of the treaties of the United States and customary international law, and are being held in violation of the regulations of the United States Military, the Geneva Conventions, and customary international humanitarian law;

9.    Order Respondents to provide Petitioners immediately with factual returns detailing the basis upon which they are allegedly being detained;

10.    To the extent Respondents contest any material factual allegations in this Petition, schedule an evidentiary hearing, at which Petitioners may adduce proof in support of their allegations;

11.    Provide Petitioners an opportunity to engage in full and fair discovery, and the right to amend this Petition; and

12.    Grant such other relief as the Court may deem necessary and appropriate to protect Petitioners' rights under the United States Constitution, federal statutory law, and international law.

Dated: December 21, 2005

Respectfully submitted,

Counsel for Petitioners:

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By _____

Julia Tarver (NY0029)
Jennifer Ching
Jana Ramsey

1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Petitioners certify, pursuant to L. Cv. R. 83.2(g), that they are representing Petitioners without compensation.

Dated: December 21, 2005

Julia Tarver (NY0029)
Jennifer Ching
Jana Ramsey
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Tel:  (212) 373-3000
Fax:  (212) 757-3990

**CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION**

Counsel for Petitioners certify, pursuant to L. Cv. R. 83.2(g), that they are representing Petitioners without compensation.

Dated: December 21, 2005

Julia Tarver (NY0029)
Jennifer Ching
Jana Ramsey
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990

**CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION**

Counsel for Petitioners certify, pursuant to L. Cv. R. 83.2(g), that they are

representing Petitioners without compensation.

Dated: December 21, 2005

Julia Tarver (NY0029)
Jennifer Ching
Jana Ramsey
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990