IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAHD UMAR ABDULMAJID AL-SHAREEF, *et al.*, | Case No. 05-2458 (RWR) |
| Petitioners/Plaintiffs, | |
| v. | |
| GEORGE W. BUSH, *et al.*, | **Oral Argument Requested** |
| Respondents/Defendants. | |

**PETITIONERS' MEMORANDUM OF LAW IN SUPPORT OF A MOTION FOR A PRELIMINARY INJUNCTION REQUIRING RESPONDENTS TO PROVIDE COUNSEL AND THE COURT WITH 30-DAYS' ADVANCE NOTICE OF ANY INTENDED REMOVAL FROM GUANTÁNAMO**

Petitioners Fahd Umar Abdulmajid Al Shareef and Hani Saeed Mohammed Banan Al-Kalf Al-Gamdi respectfully submit this Memorandum in support of their application for the immediate issuance of a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1651 (the "All Writs Act"), requiring Respondents to provide the Court and counsel at least thirty (30) days' advance notice of any intended removal of Petitioners from Guantánamo Bay Naval Station ("Guantánamo").

Petitioners are Saudi Arabian nationals who have been detained for over four years, virtually incommunicado, as "enemy combatants" at Guantánamo. As detailed in the habeas petition filed on December 23, 2005, Petitioners deny any determination that they are "enemy combatants" and contend they are being detained in violation of the Constitution, treaties and laws of the United States, as well as international law.

Over the past year, Respondents have made numerous public statements regarding their intention to transfer prisoners detained at Guantánamo to the custody of

Over the past year, Respondents have made numerous public statements regarding their intention to transfer prisoners detained at Guantánamo to the custody of their home governments. *See, e.g.*, Press Release, U.S. Department of Defense, Detainee Transfer Announced (June 24, 2006), http://www.defenselink.mil/releases/2006/nr2006 0624-13329.html; (annexed as Ex. A to the accompanying Declaration of Jennifer Ching ("Ching Decl.")). While details of these negotiations have not been made public or provided to counsel, representatives of the U.S. government have unequivocally stated that "we want to transfer as many [detainees] as we can as quickly as we can." U.S. Department of State, Daily Press Briefing, June 29, 2006, at 2 (Ching Decl., Ex. B.) Indeed, since May of this year, 29 Saudi detainees held at Guantánamo have been transferred to the custody of Saudi Arabia, where they have been imprisoned.

For these reasons, Petitioners respectfully make the limited request that Respondents provide counsel and the Court with advance notice of any intended transfer. Petitioners' request for preliminary injunctive relief arises from these urgent circumstances that potentially pose a significant risk to Petitioners' safety and directly affect Petitioners' habeas proceedings before the Court. The relief sought by Petitioners would not tie the Government's hands, but would simply maintain the status quo until the courts have the opportunity to consider the legality of the transfer before it becomes a *fait accompli*. Respondents oppose this motion.

Absent injunctive relief, Respondents could transfer Petitioners from Guantánamo without allowing Petitioners the opportunity to contest the legality of such a transfer, thus denying Petitioners precisely the relief that they have sought in this proceeding. Furthermore, transfer to certain countries, including Saudi Arabia, will subject

2

Petitioners to considerable risks of torture, retaliation and indefinite detention. There have been numerous reports, including in publications from the United States Department of State, that indicate that prisoners in such countries have been subjected to torture, abusive interrogation tactics, indefinite imprisonment and denied access to courts. Accordingly, Petitioners respectfully request that the Court order Respondents temporarily restrained from removing Petitioners from Guantánamo unless the Government provides the Court and counsel at least thirty days' advance notice of the intended removal, thereby permitting a hearing on the legality of the removal.

## STATEMENT OF THE FACTS

Beginning in March 2005, when information first became publicly available concerning the transfer of detainees from United States custody to the custody of nations like Saudi Arabia and Yemen, *see* Douglas Jehl, *Pentagon Seeks to Transfer Inmates from Cuba Base*, N.Y. Times, Mar. 11, 2005, at A1, counsel for Petitioners has sought to obtain assurances from Respondents that they would provide notice to the court and counsel of any intended removal of counsel's clients from Guantánamo. (*See* Ching Decl., Ex. C.) Respondents have refused to provide any such specific assurances. *Id.* In three *habeas* petitions filed before the United States District Court on behalf of eleven Saudi citizens, counsel for Petitioners have obtained Orders requiring advance notice. *See* Memorandum Order, *Al Subaiy v. Bush*, No. 05-1453 (RMU) (D.D.C. Sept. 19, 2005) (dkt 14); Order, *Al Joudi v. Bush*, No. 05-301 (GK) (D.D.C. Apr. 4, 2005) (dkt 10); Memorandum Order, *Al Oshan v. Bush*, No. 05-520 (RMU) (D.D.C. Mar. 31, 2005) (dkt 19).

If transferred to the custody of governments that routinely ignore international standards for treatment of detainees, Petitioners will be at great risk of

suffering abuse, torture or even death.[1] The countries to which Petitioners may be transferred, including Saudi Arabia, are known to practice torture. *See, e.g.*, Megan K. Stack & Bob Drogin, *Detainee Says U.S. Handed Him Over For Torture*, L.A. Times, Jan. 13, 2005, at A1 ("News accounts, congressional testimony and independent investigations suggests that [the CIA] has covertly delivered at least 18 terrorism suspects since 1998 to Egypt, Syria, Jordan and other Middle Eastern nations where, according to State Department reports, torture has been widely used on prisoners.").

Furthermore, since media reports first indicated that the United States government was contemplating transferring "large numbers of Afghan, Saudi and Yemeni detainees from the military's Guantánamo Bay, Cuba, detention center into new U.S.-built prisons in their home countries," Dana Priest, *Long-Term Plan Sought For Terror Suspects*, Wash. Post, Jan. 2, 2005, at A1, detainees have continued to be repatriated. Over 300 detainees have been transferred out of Guantánamo to date. *See* Press Release, U.S. Department of Defense, Detainee Transfer Announced (Aug. 26, 2006), http://www.defenselink.mil/Releases/Release.aspx?ReleaseID=9869 (Ching Decl., Ex. D.) Disturbingly, the conditions of confinement for detainees in these countries are among the worst in the world. According to experts, the Saudi Arabian criminal justice system is

---

[1] According to reports by United States and international media organizations, Respondents have repeatedly transferred detainees into the custody of foreign governments that employ inhumane interrogation techniques. The process of rendition was originally "a program aimed at a small, discrete set of suspects – people against whom there were outstanding foreign arrest warrants," but after September 11, 2001 came to include a "wide and ill-defined population that the Administration terms 'illegal enemy combatants.'" Jane Mayer, *Outsourcing Torture*, New Yorker, Feb. 14, 2005, *available at* http://www.newyorker.com/fact/content/?050214fa_fact6. *See also* Dana Priest & Barton Gellman, *U.S. Decries Abuse But Defends Interrogations*, Wash. Post, Dec. 26, 2002, at A1; Rajiv Chanrasckaran & Peter Finn, *U.S. Behind Secret Transfer of Terror Suspects*, Wash. Post, Mar. 11, 2002, at A1.

4

fundamentally lacking in basic due process, and the use of torture or other forms of ill-treatment to extract confessions is commonplace. *See, e.g.*, Affidavit of Brian Evans, submitted Sept. 17, 2004 in *Ali v. Ashcroft*, No. 04-1258 (JDB) (Ching Decl., Ex. E.) Based on such expert opinions, another judge in this district found that the allegations of Omar Abu Ali – an American citizen claiming that he was being detained and tortured in Saudi Arabia at the direction of the United States – were sufficiently credible to warrant jurisdictional discovery. *See Ali v. Ashcroft*, No. 04-1258 (JDB), 2004 U.S. Dist. LEXIS 25239, at *122 (D.D.C. Dec. 16, 2004).

Ironically, the government clearly recognizes the danger to those detained in Saudi Arabia, where "the Government executed persons for criminal offenses after closed trials," and there were credible reports of "beatings with sticks and suspension from bars by handcuffs." Dep't of State, *Country Reports On Human Rights Practices, Saudi Arabia 2005*, available at http://www.state.gov/g/drl/rls/hrrpt/2005/61698.htm, §§ 1(a),(c) (last visited July 6, 2006).

## ARGUMENT

This Court has the inherent power, under the All Writs Act, 28 U.S.C. § 1651(a), "to issue injunctions to protect its jurisdiction." *Secs. Exch. Comm'n v. Vision Commc'ns, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996); *Envtl. Defense Fund v. Envtl Prot. Agency*, 485 F.2d 780, 784 n.2 (D.C. Cir. 1973) (citing All Writs Act for proposition that appellate court had inherent power to issue injunction binding non-parties to protect its jurisdiction over appeal). This Court may issue preliminary injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure to preserve the status quo between the parties pending a final determination of the merits of the action. *Granny Goose Foods,*

*Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974); *see also* 13 Moore's Federal Practice 3D § 65.20 (2004) (stating that "a request for preliminary injunction that seeks to restore the status quo will ordinarily be granted.").

Petitioners are entitled to the relief requested because Petitioners can demonstrate (i) irreparable harm to them if this Application is not granted; (ii) a strong public interest in providing the relief Petitioners seek here; (iii) a likelihood of success on the merits; and (iv) no corresponding injury to Respondents if the restraint is granted. *See Al-Fayed v. Central Intelligence Agency*, 254 F.3d 300, 303 & n.2 (D.C. Cir. 2001); *see also O'Donnell Constr. Co. v. District of Columbia*, 963 F.2d 420, 428 (D.C. Cir. 1992); *Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958).[2]

As noted above, counsel for Petitioners were compelled to file for preliminary injunctive relief in *Al Joudi v. Bush*, 05 Civ. 301 (GK) and *Al Oshan v. Bush*, 05 Civ. 520 (RMU) after information concerning Respondents' intention to transfer Saudi, Afghani and Yemeni detainees to prisons in those nations became public. *See* Douglas Jehl, *Pentagon Seeks to Transfer Inmate from Cuba Base*, N.Y. Times, Mar. 11, 2005, at A1. Since that time, further statements by the government have supported these plans,

---

[2] Where the balance of hardships tips decidedly toward the movant, it will "ordinarily be enough that the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberative investigation." *Washington Metro. Area Transit Comm'r v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977) (quoting *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953)). "An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant. There is substantial equity, and need for judicial protection, whether or not movant has shown a mathematical probability of success." *Washington Metro.*, 559 F.2d at 844.

6

including the apparent negotiation for the wide-scale transfer of all Saudi detainees to Saudi custody within the year. To date, there have been approximately 315 prisoners transferred from Guantánamo. (Ching Decl., Ex. D.) In this year alone, the Department of Defense has transferred 51 prisoners from Guantánamo, 29 of whom were sent to Saudi Arabia. *See* Detainees at Guantanamo Bay: News Releases, http://www.defenselink.mil/news/nrdgb.html (last visited Aug. 28, 2006). Moreover, the Department of Defense has stated that there are 120 detainees at Guantánamo who have been determined to be eligible for transfer or release and it "expects that there will continue to be other transfers and releases of detainees." (Ching Decl., Ex. D.)

In requesting advance notice of transfer, Petitioners seek to preserve the jurisdiction of the federal court and seek an opportunity to contest the legality of Petitioners' removal before such removal becomes a *fait accompli*. Without an order ensuring, at the very least, proper notice before Petitioners are transferred, the continued jurisdiction of the Court in this matter could be undermined by the Government's sudden unilateral action. The Court should not allow the United States to transfer any of the Petitioners without affording their counsel an opportunity to be heard.

Indeed, this Court has recently granted the relief requested by Petitioners in other *habeas* proceedings brought by Guantanamo detainees. *See* Memorandum Order, *Said v. Bush*, No. 05 Civ. 2384 (RWR) (D.D.C. July 25, 2006) (dkt 41) (holding that "[t]ransfer or removal without notice to either counsel or petitioner could, and almost certainly would, interfere with attorney-client communication and counsel's ability to represent the clients' legitimate interests before this court" and noting that "no showing has been made that respondent's compliance with orders for thirty days' notice has posed

undue hardship or insurmountable problems"); *see also* Memorandum Order, *Hamoud* v. *Bush*, No. 05 Civ 1894 (RWR) (D.D.C. July 5, 2006) (dkt 23).

1. **Petitioners Are Likely To Succeed On The Merits.**

Petitioners have a strong likelihood of success on the merits. Petitioners are seeking habeas review of the legality of their detention at Guantánamo, a right that the Supreme Court first recognized in *Rasul* v. *Bush*, 242 U.S. 466, 483 (2004) and more recently affirmed in *Hamdan* v. *Rumsfeld*, __ U.S. __, 126 S. Ct. 2749, 2764-69 (2006). To allow Respondents to remove Petitioners from Guantánamo and place them in the hands of a foreign government which practices torture would deny them rights without due process of law. It would also violate basic international legal norms embodied not only in the Geneva Conventions, but also in the International Covenant on Civil and Political Rights and the Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment and Punishment. Removal without notice would also represent a brazen attempt to strip this court of its jurisdiction over the matter.

As Judge Collyer determined, there is sufficient likelihood of success on the merits of these claims for petitioners to receive temporary injunctive relief:

> For purposes of the TRO . . . the Court finds that it would not be necessary in any way to intrude into foreign relations or negotiations over repatriation or transfer. The Court need only assess whether removing the detainees from the jurisdiction of the Court – while insisting on their continued detention – is subject to a temporary injunction so that the legality of that detention *ab initio* can be determined and the trial judge can decide whether prior notice is appropriate. These issues are "'so serious, substantial, difficult and doubtful'" as to warrant maintaining the status quo "whether or not movant has shown a mathematical probability of success." (citation omitted).

8

> There is no doubt that the district courts have jurisdiction over the Petitioners' *habeas corpus* petitions. *Rasul*, 124 S. Ct. at 2698. There is also no doubt that "the All Writs Act, 28 U.S.C. § 1651(a), empowers a district court to issue injunctions to protect its jurisdiction . . . ." *SEC v. Vision Communications, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996).

*Abdah* Mem. Opinion at 6-7. Rejecting any argument that the District Court should refuse to issue a TRO while related detainee cases are pending before the Court of Appeals, Judge Collyer concluded:

> The Court expresses no opinion on the likelihood that Petitioners will succeed in their request for a 30-day notice prior to any transfer to a foreign country. Instead, it rules that the Petitioners have at least a fifty-fifty chance of prevailing on their constitutional claims before the Court of Appeals and that they raise serious arguments that require more deliberative consideration concerning whether removing them from the Court's jurisdiction, while insisting on continued detention, is within the province of the executive.

*Id.* at 7. Especially where, as here, the risk of irreparable harm to Petitioners is so great, Judge Collyer's reasoning should control, and the Respondents should be temporarily restrained from transferring Petitioners from Guantánamo.

### 2. Petitioners Face Substantial, Irreparable Harm If Immediate Injunctive Relief Is Not Granted.

There can be no dispute that Petitioners face substantial, irreparable harm if they are transferred to locations where they are likely to be tortured or subjected to cruel, inhuman or degrading treatment. Further irreparable harm may result if Petitioners are

transferred for indefinite detention to countries where the Respondents hope that this Court will no longer have jurisdiction to decide Petitioners' pending habeas actions.[3]

Judge Collyer has determined that the likely harm of transfer was so great to the Guantánamo detainees in *Abdah* that a TRO was warranted *regardless* of whether the threatened torture resulting from rendition actually occurred: "With or without the allegation of improper forms of interrogation in a foreign country, the Court concludes that a continuation of their detention without redress to assess its legality could constitute irreparable harm to the Petitioners." *Abdah* Mem. Op. at 8. Nevertheless, Judge Collyer went on to determine that the threat of immediate transfer is legitimate and worthy of temporary injunctive relief. Judge Collyer noted that "the Pentagon and the State Department are working together to arrange for some numbers of unspecified GTMO detainees to be transferred to foreign nations and detained for uncertain periods." *Abdah* Mem. Op. at 9. Because there is presently no way for anyone outside the chain of command in the U.S. Government to know when such a transfer is about to take place, "the Petitioners face a risk of irreparable harm that is sufficiently immediate to warrant temporary relief." *Id.*

---

[3] Judge Collyer found, for purposes of her March 12 decision in *Abdah*, that the transfer of detainees from Guantánamo may defeat habeas jurisdiction. Judge Collyer reasoned that if the petitioners were transferred to the control of a foreign country, they could effectively lose their rights to pursue their habeas claims in this country. The Court found that the petitioners' injury "would be continued detention outside the jurisdiction of U.S. courts – courts that are actively reviewing the constitutionality of that very detention." *Abdah* Mem. Op. at 7.

10

3.  **Issuing Immediate Injunctive Relief Satisfies A Strong Public Interest.**

Petitioners have a constitutionally-guaranteed right to judicial review of their detentions. *See Rasul*, 242 U.S. at 483-84. Should the government wish to undermine that right by transferring Petitioners to a country which practices torture, Petitioners should, at the very least, be afforded an opportunity to be heard first. To permit the Executive Branch to continue with the actions that Petitioners now seek to restrain would be to permit it to interfere unilaterally with that right. The public interest lies "in meticulous compliance with the law by public officials." *Fund for Animals, Inc. v. Espy*, 814 F. Supp. 142, 152 (D.D.C. 1993); *see also Fund for Animals, Inc. v. Clark*, 27 F. Supp. 2d 8, 15 (D.D.C. 1998); U.S. Const., art. II (obliging the Executive to "take care that the Laws be faithfully executed").

Confidence that the United States stands for the "rule of law" has been shattered by the Abu Ghraib prison scandals and allegations of abuse in United States detention facilities around the world, all of which create the impression that the Respondents have created judicial "black holes" that allow them to avoid the application of their own laws, as well as normative international standards. *See Art-Metal USA v. Solomon*, 473 F. Supp. 1, 8 (D.D.C. 1978) ("[O]ur system of laws does not operate on the principle of the Queen in Alice in Wonderland 'Sentence first verdict afterwards.'"). No matter how satisfied the Executive Branch may be that its actions are lawful, the public good requires that federal litigants properly before the Court and represented by counsel be provided a meaningful opportunity to contest their transfer into the hands of those who might abuse them or detain them indefinitely without due process of law. Accordingly, the public interest favors the issuance of the preliminary injunction sought here.

### 3. Granting Immediate Injunctive Relief Will Not Injure The Government's Interests.

Finally, in stark contrast to the actual irreparable harms that Petitioners face, there can be no injury to the Government where, as here, injunctive relief would merely temporarily maintain the status quo that the Government has created and enforced for the past five years. The only practical effect of a preliminary injunction would be to afford Petitioners a day in court to address the effect of a transfer from Guantánamo. As Judge Collyer determined:

> The Court can see no injury to the Government from granting a temporary injunction here. At most, this injunction will be alive for ten days unless both parties agree to its continuation or Judge Kennedy extends it another ten days. Nothing about this injunction will serve to prevent the Government's diplomatic and other efforts to arrange transfers of Guantánamo Bay detainees but it will ensure that a judicial officer reviews the Petitioners' rights to prior notice and/or retention in this jurisdiction before the Government actually carries out any such transfer.

*Abdah*, Mem. Op. at 9-10. Nothing about the Petitioners' circumstances warrants a different result in this case. Accordingly, the balance of equities favors the issuance of immediate injunctive relief preventing Respondents from removing Petitioners from Guantánamo without providing at least thirty days' prior notice to the Court and counsel.

## CONCLUSION

For the reasons set forth above, Petitioners respectfully request that this Court grant Petitioners' application for a preliminary injunction prohibiting Respondents from removing Petitioners from Guantánamo Bay Naval Base without thirty (30) days' advance notice to the Court and counsel.

Dated: New York, New York
       August 28, 2006

> Respectfully submitted,
>
> **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
>
> By:
>
> /s/ _____
>     Julia Mason (NY0029)
>     Martin Flumenbaum
>     Jennifer Ching
>
> 1285 Avenue of the Americas
> New York, New York 10019-6064
> (212) 373-3000
>
> *Counsel for Petitioners*