*PREVIOUSLY CLEARED FOR
PUBLIC FILING BY THE CSO*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAHD UMAR ABDULMAJID AL-SHAREEF, et al., <br><br> Petitioners/Plaintiffs, <br><br> v. <br><br> GEORGE W. BUSH, et al., <br><br> Respondents/Defendants. | Case No. 05-CV-2458 (RWR) |

**PETITIONERS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR A PRELIMINARY INJUNCTION REQUIRING RESPONDENTS TO PROVIDE COUNSEL AND THE COURT WITH 30-DAYS' ADVANCE NOTICE OF ANY INTENDED REMOVAL FROM GUANTÁNAMO**

Petitioners, who have been unlawfully held in United States custody for well over four years, virtually *incommunicado* and—until the past six months, without access to counsel—respectfully submit this memorandum in further support of their motion for injunctive relief. Try as the Respondents might in their Opposition brief to distort the relief requested, Petitioners' request is a simple one: that the Government provide the Court and counsel with thirty (30) days' advance notice of any intended transfer or removal of Petitioners from Guantánamo Bay Naval Station ("Guantánamo"). Contrary to Respondents' assertions, Petitioners do not intend this request to unduly interfere with, or otherwise prevent, their release from Guantánamo. Petitioners merely seek notice of any intended transfer, for continued custody or release, in order to allow a sufficient time frame in which Petitioners might consult their counsel and, should they deem that such a transfer would pose a danger to Petitioners' safety, seek an opportunity to be heard by the Court through the appropriate means.

Respondents refuse to provide this notice. Instead, Respondents claim that Petitioners' application is based on "speculation" of harm—despite the well-documented and public information concerning transfers of custody, as detailed in Petitioners' motion. Respondents' distortions of Petitioners' application are simply an attempt to distract the Court from the following unrefuted facts: (1) the Government has made evident its intention to transfer or release a substantial number of, if not all, the detainees at Guantánamo, including Petitioners; (2) there is a well-documented, and undenied, practice by the Government of transferring individuals to the custody of nations known to utilize torture in interrogation, including Saudi Arabia, the likely country of repatriation at issue for Petitioners; and (3) although providing notice to the Court and counsel of such transfers is possible and minimally burdensome, the Government refuses to do so.

Indeed, since the filing of this motion, the Government has conceded the existence and use by the United States of "secret prisons" in various locations throughout the world, *see* R. Jeffrey Smith and Michael Fletcher, *Bush Confirms Existence of CIA Prisons*, Wash. Post. at A1 (Sept. 7, 2006)—confirming the practice which prompted *habeas* counsel to begin seeking this limited relief over one year ago, when such information first became available, despite the Government's protestations at the time that such allegations were merely "rumors, myths and hype," and that counsel and petitioners were "divorced from reality."

Furthermore, the Government has also conceded that, ultimately, it relies only upon the "good faith" assurances of the receiving country with respect to the treatment of the transferred prisoner, *see* Ari Shapiro, *Court Hears Arguments on Guantánamo Transfers*, available at http://www.npr.org/templates/story/story.php?

storyId=6059905 (Sept. 12, 2006). Such a characterization of the prisoner transfer process only confirms Petitioners' concerns, and warrants the relief requested to enable Petitioners to consult with counsel should a transfer become imminent.

Petitioners have requested an extremely limited remedy from the Court as the least burdensome and minimal means to ensure that Petitioners' due process rights will be adequately protected. In light of the potentially substantial harm to Petitioners, the *de minimis* burden on the Government, and the extraordinary public interest at issue, Petitioners' application for a preliminary injunction should be granted, and the Court should order the Government to provide at least thirty (30) days' advance notice of any intended transfer or removal of Petitioners from Guantánamo.

I. **Respondents Have Failed To Provide Any Facts Disputing The Harm To Petitioners And Substantial Public Interest.**

Respondents claim that Petitioners' request unduly interferes with and harms the Government's foreign policy interests and negotiations with respect to Petitioners and, as a result, also harms the public interest. Not only is this argument unpersuasive, but it has been resoundingly rejected by the overwhelming majority of courts in this district. The Government may not "simply conflate the public interest with its own position," as Judge Kollar-Kotelly noted, *Abdah* v. *Bush,* No. 04-CV-1254, Slip. Op. at 11 (Mar. 29, 2005); nor may Respondents obfuscate the harms asserted by Petitioners with unsupported assertions of executive power. As Judge Kessler noted in granting the very relief requested here,

> [G]ranting Petitioners' request for 30 days' notice of transfer would not require the Court to second-guess foreign policy decisions of the Executive, would not require the Government to divulge information relating to its negotiations with foreign governments, and would not

prevent the Government from speaking with one voice. *Al Joudi* v. *Bush,* 2005 WL 774847 at *6 (D.D.C. Apr. 4, 2005).[1]

The courts of this district have also rejected Respondents' argument that the harm asserted by Petitioners is too "speculative" to warrant the limited relief requested. To the contrary, as stated above, the harms cited by Petitioners are very clear. A substantial percentage of prisoners "released" from Guantánamo have in fact been transferred for ongoing detention to countries acknowledged to torture prisoners, including Saudi Arabia. *Id.* at *4. Respondents here provide no further or substantive assurance that Petitioners will not face abuses or detention without process. *Id.* Thus, as Judge Kessler held, Plaintiffs' asserted harms "are not distant or speculative," *id.*; indeed, she specifically recognized "two obvious and substantial threats to Petitioners"— including the possibility of transfer to a country where they might be tortured or indefinitely confined, as well as the potential elimination of their habeas claims. *Id.*

Finally, it is clear that the public interest is served by granting the extremely limited relief requested here, as opposed to allowing the Government unfettered power to take action with respect to Petitioners, "without undue intrusion" from counsel or the Court. Resp. Opp. at 22. The present issue is solely whether or not notice should be provided to the Court and counsel, as a transfer may not only endanger Petitioners' welfare, but may also lead to their continued detention. Respondents assert that such detention is the decision of the receiving nation, and likens this situation to

---

[1] In fact, since 2005, Respondents have provided the here-requested notice for three petitioner clients of counsel in *habeas* proceedings before Judges Kessler and Urbina, respectively, where Orders requiring advance notice are in effect. The Government has established procedures in place which enable Petitioners to consult with counsel, if they so desire. The opportunity to confer with counsel prior to transfer has proven to be an extremely valuable, and minimally burdensome, process.

extradition. This could not be farther from the truth. Petitioners have asserted claims of innocence, and have challenged the lawfulness of their ongoing detention by the United States. This very detention, however, has meant that individuals released from Guantánamo suffer the collateral consequences of suspicion related to their alleged terrorist affiliations – regardless of the factual basis of such allegations – resulting in likely detention and further interrogation.

When balanced against the rights to access counsel and to be free from physical torture and unlawful detention, Respondents' claim cannot stand. Certainly, the United States Constitution "clearly protects" against "physical torture," *see McKune* v. *Lile*, 536 U.S. 24 2017, 2029 (2002), and there is undoubtedly a significant public interest in ensuring that the Government complies with its obligations under such treaties. *Cf. Heckler* v. *Community Health Servs.*, 467 U.S. 51, 61 (1984) (public has an "interest in assuring some minimum standard of decency, honor and reliability in their dealings with the Government"). An injunction, solely to afford Petitioner an opportunity to be heard, is the most limited, and appropriate, remedy. Without it, the Government may continue to outsource torture without affording Petitioners the simple right to appear before this Court—a right they have waited for over four years. Indeed, as the courts have noted in granting the relief Petitioners request in dozens of *habeas* proceedings, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Al Joudi*, 2005 WL 774847 at *6 (citation omitted). Thus, Petitioners have established sufficient harm and, correspondingly, significant public interest warranting the relief requested. For these reasons, the Court should grant Petitioners' motion for advance notice of any release or transfer from Guantánamo.

## II.     The Court Is Clearly Empowered To Enter The Requested Relief.

Respondents take the extraordinary position that the Court has no authority to require such notice. This is flatly wrong, and this Court has already entered the relief requested by Petitioners in other prisoner cases, as noted in Petitioners' moving papers. The Court has the power to enter an injunction, and Respondents have not demonstrated otherwise. Despite two Supreme Court rulings to the contrary, *see Rasul* v. *Bush*, 124 S. Ct. 2686 (2004); *Hamdan* v. *Rumsfeld*, 126 S. Ct. 2749 (2006), Respondents continue to conduct themselves as if Petitioners have no rights cognizable in this Court. First, Respondents mischaracterize the Supreme Court's ruling in *Hamdan*. Under *Hamdan*, the courts may exercise *habeas* jurisdiction over Petitioners' pending petitioners challenging the lawfulness of their detention—such a challenge is "particularly" suited for *habeas* review and remains open to Petitioners in pending cases even *after* the passage of the Detainee Treatment Act. 126 S.Ct. at 2769; *INS v. St. Cyr*, 533 U.S. 289, 311-12 (2001). The Court should not reward Respondents' disregard for the law.[2] Furthermore, "there can be no doubt that the questions raised here are so 'serious, substantial, difficult and doubtful,'" as to make them a 'fair ground for litigation'" sufficient to justify the limited relief here sought by Petitioners. *Al Joudi*, 2005 WL 774847 at 5 (quoting *Washington Metro. Area Transit Comm'n* v. *Holiday*

---

[2]  Petitioners further note that Federal Rule of Appellate Procedure 23(a) provides additional evidence of the Court's power to issue an injunction. Rule 23(a) provides that "[p]ending review of a decision in a habeas corpus proceeding . . . the person having custody of the prisoner must not transfer custody to another unless a transfer is directed in accordance with this rule." Any transfer of Petitioners must not be effected without the Court's approval, and the Court certainly has the power to issue an injunction to enforce that rule.

*Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977) ("When the balance of hardships tips decidedly toward the movant, it will 'ordinarily be enough that the [movant] has raised questions going to the merits" as described to warrant relief).

## CONCLUSION

For the reasons presented above and in their Memorandum of Law in Support of Motion for a Preliminary Injunction Requiring Respondents to Provide Counsel for Petitioners and the Court with 30-Days' Advance Notice of Any Intended Removal From Guantánamo, Petitioners' motion should be granted.

Dated: New York, New York
       September 18, 2006

                              Respectfully submitted,

                              **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

                              By: _____/s/_____
                                   Julia Tarver Mason (NY0029)
                                   Martin Flumenbaum
                                   Jennifer Ching
                                   Jana C. Ramsey

                              1285 Avenue of the Americas
                              New York, New York 10019-6064
                               (212) 373-3000