**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————

|  |  |  |
|---|---|---|
| **FAHD UMAR ABDULMAJID** | ) | |
| **AL SHAREEF,** *et al.*, | ) | |
| *Petitioner*, | ) | |
| | ) | **Civil Action No. 05-2458 (RWR)** |
| *v.* | ) | |
| | ) | |
| **GEORGE W. BUSH**, *et al.*, | ) | |
| | ) | |
| *Respondents.* | ) | |
| | ) | |

———————————————————)

**PETITIONERS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO STAY AND ABEY AND
IN OPPOSITION TO RESPONDENTS' MOTION TO DISMISS**

Petitioners submit this memorandum of law in support of the accompanying Motion to Stay and Abey these proceedings and in opposition to the Respondents' Motion to Dismiss filed on April 19, 2007.

**Preliminary Statement**

As the Court is undoubtedly aware, the status of the instant habeas proceedings is in a state of rapid flux and general uncertainty at the present time, despite Respondents' protestations to the contrary. While on February 20, 2007, the United States Court of Appeals for the District of Columbia Circuit held in a two-to-one split ruling in a related proceeding that "[f]ederal courts have no jurisdiction in these cases," Boumediene v. Bush, 476 F.3d 981, 994 (D.C. Cir. 2007), that ruling does not directly impact the instant Petitioners who had no opportunity to argue there. Moreover, due to subsequent litigation in the Circuit Court, the mandate in the

Boumediene case has yet to be entered, much less extended to cases such as this one, which were not even before the Circuit Court in Boumediene.

In addition, it cannot escape notice that the Court of Appeals decision in Boumediene has been roundly criticized as being in direct conflict with the Supreme Court's previous finding in Rasul v. Bush that the U.S. Naval Station at Guantanamo Bay, Cuba is "in every practical respect a United States territory." Cf. Rasul v. Bush, 542 U.S. 466, 487 (2004) with Boumediene, 476 F.3d at 992 ("The text of the lease and decisions of circuit courts and the Supreme Court all make clear that Cuba – not the United States – has sovereignty over Guantanamo Bay."). See e.g., Marjorie Cohn, *Why Boumediene Was Wrongly Decided*, JURIST, Feb. 27, 2007, http://jurist.law.pitt.edu/forumy/2007/02/why-boumediene-was-wrongly-decided.php; David G. Savage, *The Reach of the Writ*, ABA Journal E-Report, Apr. 20, 2007; Editorial, *Restore Right of Habeas Corpus*, L.A. Times, Feb. 23, 2007 (*Boumediene* "essentially overruled" *Rasul*); Editorial, *Habeas Corpus v. Partisanship*, Cleveland Plain Dealer, Feb. 23, 2007 (*Boumediene* "flies in the face of" *Rasul*); *Supreme Court Avoids Ruling on Important Guantanamo Case*, U.S. Federal News, April 4, 2007 (*Boumediene* "plainly ignores" *Rasul*) (statement by People for the American Way).

And while the United States Supreme Court denied certiorari in the Boumediene case on April 2, 2007, there were five Justices who wrote concerning that action. Three Justices (Justices Breyer, Souter and Ginsburg) supported the granting of certiorari and the expedition of oral argument as requested by petitioners. Two Justices (Justices Stevens and Kennedy) wrote that while they concluded that it

was not appropriate to grant certiorari "*at this time*, . . . if petitioners *later* seek to establish that the Government has unreasonably delayed proceedings under the Detainee Treatment Act of 2005 . . . or some other and ongoing injury, alternative means exist for us to consider our jurisdiction over the allegations made by petitioners before the Court of Appeals."    <u>Boumediene</u> v. <u>Bush</u>, 549 U.S. ___, 127 S. Ct. 1478 (2007) (statement of Justice Stevens and Justice Kennedy respecting the denial of certiorari) (emphasis added).    Then, in an unusually pointed instruction to this Court and others, Justices Stevens and Kennedy expressly cautioned that "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction', including this Court, 'should act promptly to ensure that *the office and purposes of the writ of habeas corpus are not compromised.*" <u>Id.</u> (emphasis added).    The Respondents' present motion to dismiss these proceedings certainly constitutes an "additional step" to prejudice the ability of the federal courts to effectuate "the office and purposes of the writ of habeas corpus." For that reason, and for the reasons explained below, Respondents' motion to dismiss the proceedings should be denied.

Contrary to the impression left by Respondents in their papers requesting dismissal, the Supreme Court's certiorari denial in the <u>Boumediene</u> case is a far cry from an unequivocal resolution of the matters raised by the instant habeas petitions. Indeed, that Justices Stevens and Kennedy went out of their way to caution this Court from disrupting the instant habeas proceedings speaks volumes about the lack of finality in the decision. It also clearly recommends that this court follow a

more prudent course of action and simply maintain the status quo and continue to hold the case in abeyance pending Petitioners' diligent exhaustion of possible remedies under the Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat. 2680 ("DTA"). Doing so will cause Respondents no prejudice yet will ensure that "the office and purposes of the writ of habeas corpus" are not compromised in the interim.

Notably, while Justices Kennedy and Stevens – the critical swing votes[1] – recited in their statement respecting the certiorari denial the oft-repeated principle that "denial of certiorari does not constitute an expression of opinion on the merits", they also went out of their way to cite to the very passages from the Rasul v. Bush opinion in which the Court expressly found that the United States Naval Station at Guantanamo Bay, Cuba is *not* outside of the territorial jurisdiction of the United States merely because the United States leases that space pursuant to a perpetual lease from the Government of Cuba. Boumediene v. Bush, 549 U.S. ___, 127 S. Ct. 1478 (2007) (statement of Justice Stevens and Justice Kennedy respecting the denial of certiorari) (citing Rasul v. Bush, 542 U.S. 466, 480-81 (2004) (majority opinion of Stevens, J.); id., at 487 (Kennedy, J., concurring in judgment)). Under these circumstances, with significant legal questions concerning the propriety of the instant

---

[1]    With three votes in favor of granting certiorari and expressing strong reservations about the Circuit Court's ruling in Boumediene, see Boumediene v. Bush, 549 U.S. ___ (2007) (Justices Breyer, Souter, and Ginsburg dissenting from the denial of certiorari), that means that that Justices Stevens and Kennedy could likely provide the pivotal fourth or fifth vote in favor of the granting of certiorari and possible reversal of the Circuit Court's opinion.

habeas corpus proceedings left unresolved by the actions of the Circuit Court and

Supreme Court in a related case, the instant Petitioners respectfully request that the

Court deny the Respondents' motion to dismiss and instead hold these cases in

abeyance until such time as Petitioners' procedural remedies under the DTA have

been exhausted.[2]  In the alternative, Petitioners request that, at a minimum, this Court

transfer the instant habeas actions to the Court of Appeals pursuant to 28 U.S.C.

§ 1631 for consolidation with Petitioners' DTA actions, which will be filed forthwith.

      The Court has clear authority for the moderate and limited relief

requested by Petitioners in their Motion to Stay and Abey these proceedings.  Indeed,

the Court has already granted such relief when Respondents sought it in 2005.

Respondents cannot credibly argue that they would in any way be prejudiced by the

granting of such prophylactic and judicially efficient relief.  As the Court is well

aware, Petitioners have been imprisoned by the United States at its Naval Base in

Guantánamo Bay, Cuba ("Guantánamo") for over five years.  During this time,

Petitioners have desperately and diligently pursued their claims of innocence and

---

[2]     Petitioners also note that several pieces of legislation are currently pending in Congress which could reinstate the right of Guantanamo Bay detainees to file habeas corpus litigation.  See, e.g., S. 185: Habeas Restoration Act of 2007, http://www.govtrack.us/congress/billtext.xpd?bill=s110-185; Editorial, *Restoring a Right: The Detention and Treatment of Foreign Prisoners Still Needs to Be Reformed*, Wash. Post, Feb. 15, 2007; Editorial, *Habeas Erroneous*, Ft. Worth Star-Telegram, Feb. 25, 2007, at E2; Scot Lehigh, Op-Ed., *Testing the Line Between Despotism and a Free Society*, Boston Globe, Feb. 27, 2007, at 13A; Editorial, *The Cloud Over Gitmo*, L.A. Times, April 2, 2007.  *See generally*, Editorial, *The Must-Do List*, N.Y. Times, March 4, 2007, at A11; Alberto J. Moran and Thomas R. Pickering, *Extend Legal Rights to Guantanamo*, Wash. Post, March 5, 2007.

other claims for relief.  At the time Petitioners filed their habeas Petition, this Court

had undeniable jurisdiction to review the grounds for their ongoing detention pursuant

to the United States Supreme Court's decision in <u>Rasul</u> v. <u>Bush</u>, 542 U.S. 466 (2004).

Nonetheless, in 2005, over Petitioners' objection, Respondents sought and received a

stay of these proceedings so that the question of the propriety of the habeas corpus

claims could be adjudicated by other courts.

 Now, Respondents seek to abandon the stay that they themselves

requested while these matters are still being litigated in the very same appellate

courts.  Respondents strenuously argue against a stay here even though the very same

principles of judicial economy that Respondents invoked in their 2005 request for a

stay apply with equal, if not greater, force  here.  <u>See</u>, <u>e.g.</u>, Respondents' Motion to

Stay Proceedings Pending Related Appeals and For Continued Coordination, filed

with this Court on March 10, 2005 at 1 ("The pending appeals will address the core

issues in the above-captioned cases and, thus, determine how the cases should

proceed, if at all. . . .[F]urther proceedings would require the expenditure of

significant judicial and other resources that may be avoided as a result of the appeals,

and, in any event, *such proceedings very likely would have to be revisited or*

*relitigated once the appeals are decided* and the Court of Appeals provides guidance

regarding handling of the claims in these Guantanamo detainee cases.") (emphasis

added).

 Respondents rest their argument for dismissal and against a stay on the

notion that the Court of Appeals' decision in <u>Boumediene</u> v. <u>Bush</u>, 476 F.3d 981

(D.C. Cir. 2007), has "settled" the law of the Circuit and that, under the Military

Commissions Act of 2006, Pub. L. 109-366, 120 Stat. 2600 ("MCA"), the Court lacks

jurisdiction to adjudicate Petitioners' habeas corpus claims.  Respondents' Motion at

3-4 ("Mot.").  Yet respondents fail to acknowledge that the constitutionality of the

MCA is still very much in dispute and is being litigated actively.  As such, the Court

still has subject matter jurisdiction over the habeas petition.

        According to the very same case Respondents rely upon to support their

motion, dismissal for lack of subject matter jurisdiction is proper *only when* the

federal claim is frivolous or foreclosed by prior decisions of the Supreme Court.  See

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998).  Neither situation

applies here:  the allegations set forth in the habeas petition, the Circuit Court's

divided decision in Boumediene, as well as commentary and dissent from the Justices

of the Supreme Court in its denial of certiorari in that case establish that the issues

involved here are constitutionally significant, and that the Supreme Court has *not yet*

decided the central questions raised by petitioners in those cases.  Indeed, the critical

question of whether the MCA was an unconstitutional suspension of habeas corpus

was expressly deferred by the Supreme Court until such time as petitioners have

exhausted any possible remedies in the Circuit Court under the DTA.  As such, this

Court retains subject matter jurisdiction until those threshold questions are fully and

finally resolved.  Until then, the Court has discretion to maintain the current stay and

continue to hold the proceedings in abeyance pending Petitioners' exhaustion of

remedies.  Such a procedure has been upheld by the Supreme Court in an analogous

context where habeas petitioners must exhaust their remedies in other courts prior to proceeding on their claims in federal court.  See Rhines v. Weber, 544 U.S. 269 (2005).

In addition, it is beyond cavil that under the well-established doctrine first set forth in United States v. United Mine Workers, while the Supreme Court rules on jurisdictional questions, lower courts have "authority, from the necessity of the case, to make orders preserv[ing] the existing conditions and the subject of the petition." 330 U.S. 258, 290-91 (1947).  Thus, where, as here, questions of jurisdiction are subject to further decision by appellate courts,  the court in question still has the authority to issue orders maintaining the status quo of the petition. Maintenance of the status quo causes no prejudice to the Respondents, while dismissal of these cases would cause serious harm to Petitioners.  Certain procedural protections, including access to counsel, the right to make emergency motions, and the right to be notified 30 days in advance of release to a foreign government, would all be voided if these cases were to be dismissed prematurely.  In addition, if these cases are dismissed now, and the Supreme Court subsequently decides to take the up the constitutional question of whether the MCA violates the Suspension Clause, considerable investment of judicial time and resources spent on these complicated cases will be wasted.  For these practical reasons, the Court should maintain its current stay order, rather than dismiss this habeas action, while the DTA petition is being litigated.

## ARGUMENT

**I.    The Court Retains Subject Matter Jurisdiction Over Petitioners' Habeas Claims**

      **A.    The Circuit Court's Decision in <u>Boumediene</u> Is Not Binding On This Court**

        Petitioners were not parties before the Court of Appeals in the <u>Boumediene</u> case; thus, that case has no direct application to Petitioners herein.  In addition, the Court of Appeals has not issued its mandate in <u>Boumediene</u>.  The <u>Boumediene</u> petitioners have asked the court to stay the issuance of its mandate pending completion of DTA proceedings and the filing of a renewed petition for certiorari to review the court's jurisdictional ruling in <u>Boumediene</u>.  The court has not yet acted on the motion.

        Moreover, even if the <u>Boumediene</u> mandate were to issue, this Court is not obligated to rotely apply the Court of Appeals' conclusions regarding the jurisdictional implications of the MCA.  A district court has authority to ignore an otherwise binding mandate of the court of appeals where there is a clear pronouncement that the law is not as the court of appeals understood it to be.  <u>See</u>, <u>e.g.</u>, <u>Blakesly</u> v. <u>Wolford</u>, 662 F.Supp. 55, 58 (E.D. Pa 1987) (court has "authority to ignore the otherwise binding mandate of the court of appeals if there has been a clear pronouncement that Texas law is not as the Third Circuit understood it to be").  Similarly, it has long been held that courts have jurisdiction to determine their own jurisdiction.  This type of threshold jurisdictional determination, which must be made in each case based on its own facts, is precisely what is required of Article III judges.  <u>See</u>, <u>e.g.</u>, <u>Ex</u>

parte Milligan, 71 U.S. 2, 131 (1866) ("The suspension of the privilege of the writ of

habeas corpus does not suspend the writ itself. The writ issues as a matter of course;

and on the return made to it the court decides whether the party applying is denied the

right of proceeding any further with it."); Duncan v. Kahanamoku, 327 U.S. 304 (1946)

(Court acknowledged jurisdiction and determined that petitioner did not fall within the class of

people to whom Hawaiian martial law declaration applied); United States v. Villato, 2

U.S. (Dail.) 370 (D.C. Cir. 1797) (where prisoner had not been naturalized, the writ was

granted to free him from treason charge).  Nothing precludes this Court from

conducting its own investigation into the jurisdictional issues involved in Petitioners'

claims.

###### B.       The Constitutionality of the MCA Is Currently Being Litigated

Respondents argue that the law of the circuit is settled, Mot. at 4, but

this is premised upon an incorrect interpretation of Boumediene.   While the Court of

Appeals has ruled on its interpretation of whether the MCA violates the Suspension

Clause, the U.S. Supreme Court expressly reserved judgment on that question.  Thus,

until that question is resolved, the constitutionality of the MCA itself is still in

dispute.  As previously described, three Justices dissented from the denial of

certiorari, stating that the jurisdictional and constitutional questions raised by the

petitioners "deserve this Court's immediate attention."  Id. at 1479 (Breyer, J., joined

by Souter and Ginsburg, JJ., dissenting).  Two additional Justices specifically

expressed concern regarding maintenance of the status quo during the pendency of

further litigation: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" Id.  Thus, five Justices of the U.S. Supreme Court have made clear that upon Petitioners' exhaustion of their DTA remedies, the Supreme Court will give serious consideration to a renewed certiorari petition seeking review of the Court of Appeals' decision in Boumediene. Until that time, other courts "should act promptly to ensure that the office an purpose of the writ of habeas corpus are not compromised."  Id.

        While Respondents dismiss this process as a "speculative chain of events," Mot. at 5, in reality, this process is well underway.  As demonstrated by the dissenting opinions at both the Circuit Court level and on the denial of certiorari in Boumediene, there is a reading of the Constitution and laws of the United States that would sustain Petitioners' habeas petition. 476 F.3d at 994-1012 (Rogers, J., dissenting); 127 S.Ct. at 1479-81 (Breyer, Souter & Ginsburg, JJ., dissenting from denial of certiorari).  For these reasons alone, this Court retains subject matter jurisdiction over Petitioners' habeas claims.  The Steel Co. Court stated that a federal district court has subject matter jurisdiction as long as there is a non-frivolous argument that the laws and Constitution support the claim at issue:

                [T]he district court has jurisdiction if 'the right of the
                petitioners to recover under their complaint will be
                sustained if the Constitution and laws of the United States
                are given one construction and will be defeated if they are

> given another.' . . . unless the claim 'clearly appears to be
> immaterial and made solely for the purpose of obtaining
> jurisdiction or where such a claim is wholly insubstantial
> and frivolous.'

523 U.S. at 89 (quoting Bell v. Hood, 327 U.S. 678, 682-83, 685 (1946)). Where, as

here, Petitioners raise legitimate claims, the court retains jurisdiction.

The Steel Co. opinion also establishes that a Circuit Court opinion,

such as Boumediene, is not sufficient to deprive the Court of subject-matter

jurisdiction. Only when the Supreme Court rules adversely on the merits is dismissal

for want of subject matter jurisdiction appropriate: "Dismissal for lack of subject-

matter jurisdiction because of the inadequacy of the federal claim is proper only when

the claim is 'so insubstantial, implausible, *foreclosed by prior decisions of this Court*,

or otherwise completely devoid of merit as not to involve a federal controversy."

Steel Co., 523 U.S. at 89 (quoting Oneida Indian Nation of N.Y. v. County of Oneida,

414 U.S. 661, 666 (1974) (emphasis added)). The Boumediene denial of certiorari is

emphatically not a ruling on the merits. 127 S.Ct. 1478 ("And, as always, denial of

certiorari does not constitute an expression of any opinion on the merits").

Thus, Boumediene does nothing to impair Petitioners' rights to exhaust

their remedies while this Court preserves the status quo.[3] Indeed, in the analogous

---

[3] The government erroneously cites to Ayuda v. Thornburg, 919 F.2d 153 (D.C.Cir. 1990), for the proposition that a Court of Appeals opinion immediately becomes the law of the circuit, depriving the courts of the power to stay and hold in abeyance. In fact, the majority ruled in Ayuda that a stay was appropriate. The government cited a concurring opinion only, and, in that opinion, the concurring Judge ultimately agreed with the majority, which rejected the proposition that the court lacked power to enter a stay. See Ayuda, 919 F.2d at 153. The other concurring and dissenting

administrative law context, where a party challenges the constitutionality of congressional legislation and regulations, district courts retain "original jurisdiction to consider . . . constitutional claims" and are not precluded "merely because the court of appeals ultimately has exclusive jurisdiction" to review the actions of an agency as a result of a federal statute implementing such a process. Time Warner Entertainment Co. v. FCC, 93 F.3d 957, 964 (D.C. 1996); see also Daniels v. Union Pacific Railroad Co., 2007 WL 926980, at *3 (D.D.C. Mar. 29, 2007) (district court is allowed "to hear constitutional claims related to the subject matter over which the Court of Appeals would have exclusive jurisdiction" where plaintiffs challenge "the very constitutionality" of the regulations at issue).

Until Petitioners have been afforded the opportunity to file and exhaust their DTA claims, and to follow the course suggested by Justices Stevens and Kennedy in Boumediene, it is far from clear how the Supreme Court will decide the significant constitutional question of whether Congress can retroactively suspend habeas corpus for persons detained at the U.S. Naval Station at Guantanamo Bay, Cuba. Therefore, while Petitioners diligently follow the course recommended by Justices Stevens and Kennedy, this Court has the practical, simple and Supreme Court-approved discretion to hold these cases in abeyance while the Petitioners pursue their remedies in DTA litigation. Accordingly, the Court should reject

---

opinion correctly articulated the applicable law that, until the Supreme Court speaks on jurisdiction, the District Court has the power to determine its own jurisdiction including "minimally, the power to maintain the status quo." Ayuda, 919 F.3d at 155-56 (Wald, C.J., concurring and dissenting).

Respondents' Motion to Dismiss and grant Petitioners' motion to stay and abey the proceeding in this Court.

## II.    The District Courts Have Discretion To Enter Stay-And-Abey Orders

"District courts . . . ordinarily have authority to issue stays, see Landis v. North American Co., 299 U.S. 248, 254 (1936), where such a stay would be a proper exercise of discretion, see Clinton v. Jones, 520 U.S. 681, 706 (1997)." Rhines v. Weber, 544 U.S. 269, 276 (2005).  In Rhines v. Weber, the Supreme Court explicitly approved the stay-and-abey procedure in circumstances remarkably analogous to the present case.  In the Rhines case, the Court held that where a habeas petitioner has failed to exhaust all available remedies in state court, a federal court may retain jurisdiction over the pending habeas petition, staying the action while petitioner exhausts potential state court remedies.  544 U.S. at 277.  Given the inherent prejudice to the petitioner in the dismissal of the case, the Court found that district courts have discretion to enter a stay-and-abey order in a federal habeas case, even while unexhausted claims are presented to the state court.[4]

---

[4]    The Government's argument that the holding in Rhines is constrained by statute, Resp. Mot. at 7, is without merit.  Particularly in light of Justice Kennedy and Stevens' express warning regarding the exhaustion of Petitioners' remedies, such a procedure is properly within the discretion of the Court. Given a federal statutory scheme for the filing and disposition of Petitioners' unexhausted claims, as here, Petitioners' habeas proceedings should continue to be stayed and held in abeyance pending completion of Petitioners' DTA review.  Staying this action to allow Petitioner to exhaust his DTA claims in the Court of Appeals and then seek review of that court's holding in Boumediene is consistent with the directives of Justices Stevens and Kennedy, and is also consistent with longstanding Supreme Court

Indeed, the <u>Rhines</u> Court held that under certain circumstances, the
*failure* to enter a stay may constitute an abuse of discretion.  As the Court explained,
in the absence of intentional dilatory tactics by a habeas petitioner, "it likely would be
an abuse of discretion for a district court to deny a stay and to dismiss" a petition if
the petitioner has good cause for the failure to exhaust and the unexhausted claims are
potentially meritorious.  <u>Rhines</u>, 544 at 278; <u>accord</u> <u>Pace</u> v. <u>DiGuglielmo</u>, 544 U.S.
408, 416-17 (2005).  As the Supreme Court made clear in <u>Duncan</u> v. <u>Walker</u>, 533 U.S.
167, 182 (2001) (Stevens, J., joined by Souter, J., concurring in part and concurring in
the judgment), "there is no reason why a district court should not retain jurisdiction
over a meritorious [habeas] claim and stay further proceedings pending the complete
exhaustion of state remedies."  The conditions under which failure to stay-and-abey
would constitute an abuse of discretion – good cause, no deliberate delay and
potentially meritorious claims – are abundantly present in this case.

    **A.    Petitioners Have Established Good Cause For Their Failure To Exhaust DTA Remedies**

First, it is irrefutable that Petitioners have established good cause for
their failure to exhaust any remedies under the DTA.  Indeed, the purported DTA
"remedy" did not exist at the time Petitioners filed their habeas petitions in this Court.
It was not until the recent <u>Boumediene</u> opinion that Petitioners had any reason to

—————————————————————————————————————————

precedent regarding the proper course of action to be taken by a federal court when
presented with unexhausted habeas petitions brought pursuant to 28 U.S.C. § 2254.

believe that a remedy other than habeas corpus should be pursued. Moreover, as recently as June of last year, the Supreme Court held that the DTA did not apply retroactively to habeas corpus petitions, such as the instant ones, that were filed prior to the effective date of the statute. Hamdan v. Rumsfeld, 126 S.Ct. 2749, 2762-69 (2006). In response to Hamdan, Congress passed the MCA on October 17, 2006, which amended the DTA so that its provisions did apply retrospectively. *See* Boumediene, 476 F.3d at 985. As a result of these developments, the "remedy" purportedly at issue here is the product of both recent Congressional and legal developments, which Petitioners could not have exhausted prior to their habeas filing.

The questions left open by the Supreme Court's decision in Rasul *v.* Bush, 542 U.S. 466, which established a right to proceed under § 2241 at the time Petitioners submitted their petitions, and the subsequent legislative developments in the DTA and MCA have resulted in major complexities that left the legal landscape opaque. The Court of Appeals required several rounds of briefing over two years before it could issue its decision in February 2007. Respondents argue that Petitioners could have pursued these petitions any time since the enactment of the DTA, *see* Mot. at 7, however, it should be noted that as of the Supreme Court's decision in Hamdan *v.* Rumsfeld, 126 S. Ct. 2749 (2006), Petitioners, whose cases were filed well before the enactment of the DTA, had no reason to believe that their habeas petitions would be dismissed and that an alternative remedy would be necessary.

Petitioners thus had excellent reasons for not initiating the DTA procedures until the denial of certiorari in <u>Boumediene</u>.  Accordingly, there can be no dispute that Petitioner has good cause for his failure to exhaust the remedy.  <u>See</u> <u>Pace</u> v. <u>DiGuglielmo</u>, 544 U.S. 408, 416 (2005) (potential confusion regarding available remedies requires equitable protections).

**B.    Petitioners' Claims Are, At Least, Potentially Meritorious**

The claims raised by the Petitioners are substantial and meritorious. Petitioners have alleged that the purported Executive and statutory bases for their prolonged detention without charge violates the Constitution, federal statutes and international laws and treaties. They have further alleged that their prolonged, indefinite detention is unlawful because they are not "enemy combatants" as deemed by the Government, and that the basis upon which such terms have been defined is unlawful and in violation of Petitioners' rights to due process.  Petitioners also claim that the evidence used by the Government in support of its claims against Petitioners was obtained through torture and abuse and that substantial evidence exists to supplement and wholly negate the flimsy record upon which each Petitioner has been wrongfully imprisoned for over five years.  In light of these issues, there can be no doubt that Petitioners' claims are substantial and certainly "potentially meritorious."

**C.    Petitioners Have Not Engaged In Any Dilatory Tactics**

As discussed above, Petitioners have acted diligently to accelerate their case, and have opposed Respondents' repeated attempts to delay the proceedings.

And, contrary to Respondents' claim that a stay would result in a waste of time, Mot.

at 10, Petitioners' requested relief will only serve to hasten a speedy review of the

constitutional issues presented in the habeas petitions after the DTA claims are

exhausted.  Because there is a reasonable possibility that the Supreme Court will, in

the not-distant future, find the jurisdictional holding in Boumediene to be in error,

dismissal of this case would cause unnecessary additional delay that is inimical to the

nature of habeas relief, particularly when, as here, Petitioners have already waited

over five years to have their day in court.  See Carafas v. La Vallee, 391 U.S. 234,

238 (1968) (habeas writ, "shaped to guarantee the most fundamental of all rights, is to

provide an effective and speedy instrument by which judicial inquiry may be had into

the legality of the detention of a person").  Furthermore, should the DTA proceedings

prove to be an inadequate substitute for constitutionally-invoked habeas procedures,

the parties will be poised to proceed immediately on the habeas petitions based on the

record Petitioners have diligently put before the Court.

**III.    Under United Mine Workers, the Court Has Authority To Preserve The
         Status Quo While Jurisdictional Questions Are Litigated.**

As discussed above, in the statement accompanying the Supreme

Court's Order in Boumediene, two Justices stated:  "Were the Government to take

additional steps to prejudice the position of petitioners in seeking review in this

Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly

to ensure that the office and purposes of the writ of habeas corpus are not

compromised.'"  127 S.Ct. 1478.  The Justices' language echoes the long-established

principle that while a matter is under consideration, the courts have "authority from

the necessity of the case to make orders to preserve the existing conditions and

subject of the petition." United States v. United Mine Workers, 330 U.S. 258, 291

(1947) (quoting United States v. Shipp, 203 U.S. 563, 573 (1906) (Holmes, J.)).

     Respondents improperly seek to have the Court dismiss Petitioners'

case and vacate any Orders currently in effect, including the Amended Protective

Order and Procedures Counsel Access to Detainees, See In re Guantanamo Detainee

Cases, 344 F. Supp.2d 174 (D.D.C. Nov. 8, 2004), granting and governing counsel's

access to their clients.  In addition, Respondents seek dismissal of any pending

motions before the Court related to Petitioners, specifically, Petitioners' August 28,

2006 Motion for the production of factual returns setting forth the reasons for

Petitioners' detention.

     The position advanced by Respondents should not be tolerated by this

Court.  Rather, this Court should follow the clear and practical guidance of United

Mine Workers:

> Of course, whether or not there was jurisdiction to decide
> the merits, until the question of jurisdiction is determined,
> there was "authority from the necessity of the case to make
> orders to preserve the existing conditions and the subject of
> the petition . . . ." . . . Clearly there was "power to preserve
> existing conditions while . . . determining [the] authority to
> grant injunctive relief."

In re President and Directors of Georgetown College, 331 F.2d 1000, 1005 (D.C. Cir.

1964) (quoting United Mine Workers).  See also Kircher v. Putnam Funds Trust, 126 S.

Ct. 2145, 2155 (2006) (a court's "adjudicatory power is simply its authority to determine

its own jurisdiction to deal further with the case"); Ex parte Milligan, 71 U.S. 2, 131 (1866) ("The writ issues as a matter of course; and on the return made to it the court decides whether the party applying is denied the right of proceeding any further with it."). This Court should carefully protect the status quo by maintaining the Orders entered to date to assure the petitioners are not prejudiced in their ability to litigate the DTA or any other action arising out of their wrongful imprisonment at Guantánamo.

These Orders previously entered in this case are necessary to ensure, *inter alia*, that "the office and purpose of the writ of habeas corpus are not compromised." 127 S.Ct. 1478. If dismissed, Petitioners would suffer the very prejudice Justices Stevens and Kennedy have instructed the courts to guard against. Respondents may not now select only the court-ordered procedures with which they agree in an attempt to ultimately block Petitioners access to counsel and the courts. Not only is such a course of action undeniably prejudicial to Petitioners, but it raises significant practical issues.

For example, Respondents have suggested that the Amended Protective Orders may be renegotiated and replaced in the Circuit Court. Mot. at 9-11. However, Respondents' first filing in the Circuit Court on this very issue, *see* Brief for Respondent Addressing Preliminary Motions, Bismullah v. Gates, Nos. 06-1197, 06-1397 (D.C.), is instructive: Respondents seek drastically to curtail Petitioners' access to counsel. New procedures proposed by Respondents include limitations on the number of times a petitioner may meet with counsel and the authorization of a team of intelligence officers to review counsel-client communications. In addition,

the Government—and not the Court—would be given authority to sanction counsel whom Respondents suspect of violating the counsel access procedures.  Respondents' proposal represents a substantial departure from the procedures that the district courts have overseen for the past four years and, tellingly, provides the Court with a glimpse into the prejudicial agenda the Government seeks to impose by obtaining a dismissal of Petitioners' habeas proceeding.

Pursuant to the explicit instructions of Justices Stevens and Kennedy, and in accordance with the time-honored principles established in <u>Rhines</u> and <u>United Mine Workers</u>, this Court should stay this action pending the resolution of Petitioners' DTA and related proceedings.  This course of action will work no prejudice on Respondents.  It will, however, save Petitioner the uncertainty accompanying attempts to "resurrect" a dismissed habeas claim following exhaustion of his DTA remedies—under circumstances where every delay only prolongs Petitioners' unlawful detention.  Thus, not only is Petitioners' request in accordance with the views expressed by a majority of the Supreme Court, it is also the most economical and efficient way to proceed so that one day, hopefully very soon, these unfortunate petitioners will finally have their day in court.

**IV.    In the Event this Court Determines it Lacks Jurisdiction, Petitioners' Cases Should Be Transferred to the Court of Appeals Pursuant to 28 U.S.C. 1631.**

If the Court nevertheless finds that it lacks jurisdiction to hear this case and declines to enter a stay, it should transfer the habeas action to the Court of

Appeals for consolidation with Petitioners' DTA petitions which will be filed

forthwith.  28 U.S.C. § 1631 provides in relevant part:

> Whenever a civil action is filed in a court…or an appeal…is noticed for
> or filed with such a court and that court finds that there is a want of
> jurisdiction, the court shall, if it is in the interest of justice, transfer
> such action or appeal to any other such court in which the action or
> appeal could have been brought at the time it was filed or noticed, and
> the action or appeal shall proceed as if it had been filed in or noticed
> for the court to which it is transferred on the date upon which it was
> actually filed in or noticed for the court from which it was transferred.

As described above, it is in the interest of justice for this Court to ensure that the current

Orders remain in place, thus maintaining counsel's unbroken access to evidence needed

to prepare the DTA petition, as well as affording Petitioners an opportunity to participate

in the preparation of their DTA submissions, pending the Court of Appeals' decision on

how to govern these proceedings.[5] It is also in the interest of justice to preserve the status

quo, where the Court of Appeals has jurisdiction over the same general subject matters,

and must consider issues of client access and the scope of merits review, but has not yet

had the opportunity to act.  Under the circumstances, including the uncertain and shifting

scope of federal court jurisdiction, this Court, at a minimum, should ensure that there is

---

[5]    The Government has taken the position both in the Court of Appeals and in this
Court that the prisoners' habeas corpus cases should be transferred pursuant to 28
U.S.C. § 1631, and has cited legislative history of the DTA that it suggests supports
such transfer.  E.g., Al Odah v. United States, Nos. 05-5064, 05-5095 through 05-
5116, Nos. 05-5062, 05-5063, Reply of Federal Parties Addressing the Detainee
Treatment Act of 2005, at 28-31 (D.C. Cir. Mar. 17, 2006) (citing comments of
Senator Graham, *inter alia*); Hamdan v. Rumsfeld, Civil Action No. 1:04-cv-01519-
JR, Respondents' Reply in Support of Motion to Dismiss, at 45 n.24 (D.D.C. Dec. 8,
2006).

no gap in governing procedures until the Court of Appeals can fully consider these

matters in Bismullah, No. 06-1197, and Parhat v. Gates, No. 06-1397.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that this

Court (1) deny Respondents' Motion to Dismiss; and (2) maintain the current stay

entered in Petitioners' habeas proceedings and hold the proceedings in abeyance

pending Petitioners' diligent exhaustion of remedies in the Court of Appeals; or, in

the alternative, (3) transfer this habeas action to the Court of Appeals pursuant to 28

U.S.C. § 1631 for consolidation with Petitioners' DTA actions to be filed forthwith.


Respectfully submitted,

/s/ Julia Tarver Mason
Julia Tarver Mason
Martin Flumenbaum
Jennifer Ching
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Tel:  (212) 373-3000
Fax:  (212) 757-3900

*Counsel for Petitioners*

May 3, 2007

23