IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FAHD UMAR ABDULMAJID AL SHAREEF, *et al.*, <br><br> *Petitioners,* <br><br> v. <br><br> GEORGE W. BUSH, *et al.*, <br><br> *Respondents.* | Civil Action No. 05-2458 (RWR) |

**PETITIONERS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF THE MOTION TO STAY AND ABEY**

Petitioners respectfully submit this reply memorandum of law in further support of their May 3, 2007 Motion to Stay their habeas action and to hold it in abeyance pending Petitioners' exhaustion of remedies under the Detainee Treatment Act of 2005, Tit. X, 119 Stat. 2739 ("DTA").[1] In the alternative, Petitioners ask that the Court transfer these cases to the United States Court of Appeals, District of Columbia Circuit, pursuant to 28 U.S.C. § 1631.

---

[1] On April 19, 2007, the Government filed motions to dismiss all current habeas actions pending in the district courts. Motion to Dismiss, filed Apr. 19, 2007, 05 Civ. 2458 (RWR) (dkt # 36) ("Resp. Mot."). On May 3, 2007, Petitioners filed an Opposition to Respondents' Motion and a separate Motion to Stay and Abey their habeas proceedings. Petitioners' Memorandum of Law in Support of Motion to Stay and Abey and In Opposition to Respondents' Motion to Dismiss, filed May 3, 2007 (dkt # 37). On May 14, 2007, Respondents filed yet another universal memorandum of law in response to all of the habeas petitioners' oppositions and motions, including the Al Shareef Petitioners. (dkt # 40).

Despite Respondents' strident protestations to the contrary, this Court maintains the power to stay Petitioners' habeas cases, and in the interest of judicial economy, fundamental fairness, and out of an abundance of caution, it should do so. As explained in Petitioners' moving papers, *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007) does not dictate the immediate dismissal of all Guantanamo prisoners' habeas cases. The Circuit Court in *Boumediene* has not even issued a mandate, and even if a mandate were to issue in *Boumediene*, that mandate would not control the Petitioners here who had no opportunity to be present and argue before that Court. Moreover, try as Respondents might, they cannot ignore the obvious import of the opinions of five U.S. Supreme Court Justices, two of whom in denying certiorari "at this time" in *Boumediene*, made clear that Petitioners' access to the courts should not be prejudiced pending exhaustion of other potential remedies. *Boumediene v. Bush*, 549 U.S. __, 127 S.Ct. 1478 (2007); *see also* Petitioners' Memorandum of Law in Support of Motion to Stay and Abey and in Opposition to Respondents' Motion to Dismiss, filed May 3, 2007 (dkt # 37) ("Pet. Mem."), at 1-8. Indeed, as previously noted, Justices Stevens and Kennedy went out of their way expressly to caution courts to "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised." *Boumediene v. Bush*, 549 U.S. __, 127 S.Ct. 1478 (2007). Under these highly unique and compelling circumstances, the lower courts are well advised to proceed with caution and simply maintain the status quo—which will prejudice no one—and refrain from taking the aggressive actions recommended by Respondents, which would undoubtedly severely harm Petitioners' rights and

interests in a fair and expeditious hearing. Accordingly, Petitioners ask the Court to do what it is empowered to do: hold the habeas cases pending before it in abeyance until the Petitioners have had the opportunity to exhaust the remedies provided by the DTA. In the alternative, Petitioners request that, at a minimum, their cases be transferred to the Court of Appeals pursuant to 28 U.S.C. § 1631.

## ARGUMENT

### I. WHERE JURISDICTIONAL QUESTIONS ARE UNRESOLVED, IT IS APPROPRIATE FOR THE COURT TO STAY AND ABEY THE PROCEEDINGS

#### 1. Courts May Stay Cases to Preserve the Status Quo

Respondents' argument that the DTA strips this Court of jurisdiction to stay Petitioners' action is misguided. While rare, the current situation is not sui generis, and history shows that courts have stepped forward in other contexts to protect the interest of petitioners while questions concerning the courts' jurisdiction are resolved. In fact, only two years ago, federal district courts were in a similar situation after Congress passed the Real ID Act of 2005, Pub. L. No. 109-13 § 106, 119 Stat. 231 ("Real ID Act"). The Real ID Act vested exclusive review of administrative removal orders in the courts of appeals and required the transfer of pending habeas cases from district courts to the court of appeals of the appropriate circuit. While the district courts found that Congress' intent to divest them of jurisdiction was clear, many concluded that it was nevertheless necessary and appropriate to stay removal orders until jurisdictional questions were definitively resolved in order to protect the habeas petitioners from manifest injustice. *See, e.g., Hernandez v. Ganther*, 2006 WL 2270391, *1, *2 (S.D.N.Y. Aug. 7, 2006);

*Campos-Javier* v. *Ashcroft*, 2005 WL 1330922, *1 (S.D.N.Y. June 6, 2005); *Martinez* v. *Ashcroft*, 2005 WL 1765713, at *1 (S.D.N.Y. July 25, 2005); *Campbell* v. *Ashcroft*, 2005 WL 2488443, at *1 (D.N.J. May 24, 2005); *Maharaj* v. *Chertoff*, 2005 WL 1220943, *1 (N.D. Cal. May 23, 2005). The same should be done here.

  Here, even more than under the Real ID Act, the equities of the situation clearly merit a stay. Should Petitioners' claims challenging the constitutionality of the DTA prove meritorious, a stay of the action will enable Petitioners to return to this Court and proceed without any further delay—preserving judicial resources and promoting efficiency. On the other hand, if the Court does not maintain the current stay, and the DTA remedies ultimately prove deficient, or if their constitutionality is overturned, or if Congress enacts legislation repealing the DTA, then the parties and the Court will be in the uncomfortable position of having to start all of these habeas cases over from scratch, refiling and relitigating issues that have long since been resolved. Such a delay would only serve the interests of Respondents and would greatly damage the already-prejudiced Petitioners who have been waiting over five years for their day in court.

  While in the context of the DTA petitions the D.C. Circuit may address some, but certainly not all, of the procedural matters that this Court has considered in the last twenty-five months of litigation, that fact is of little solace to individuals, like the instant Petitioners, who have not yet had an opportunity to file their DTA petitions. Moreover, because of the nature of the DTA proceedings, Respondents have argued for significantly more stringent procedures governing counsel access. However, all of this would become moot if the DTA is ultimately repealed or overturned. If that were to

occur, these issues would simply have to be relitigated before this Court, wasting years worth of litigation. Under these circumstances, where the Supreme Court has invited Petitioners to exhaust their DTA claims "as a precondition to accepting jurisdiction over applications for habeas corpus," *Boumediene*, 549 U.S. __, 127 S. Ct. at 1478, it would be far more expeditious to stay the cases, rather than dismiss them. For these practical reasons, the Court should maintain its current stay order until the resolution of Petitioners' habeas rights is definitively resolved.

2. **Jurisdiction is Still Unsettled**

Respondents' argument that *Boumediene* is the settled law of the Circuit fails to acknowledge the nature of the Supreme Court's denial of certiorari and Petitioners' peculiar procedural posture.[2] Should the DTA procedures fail to adequately

---

[2] The district courts have no power to dismiss any of the petitions of the *Boumediene* petitioners as no mandate has issued. *See United States* v. *De Fries*, 139 F.3d 1292, 1302 (D.C. Cir. 1997) ("The district court does not regain jurisdiction ... until the court of appeals issues its mandate.") (citation omitted). Respondents rely on dicta in *Ayuda, Inc.* v. *Thornburgh*, 919 F.2d 153, 154, 287 (D.C. Cir. 1990), for the proposition that district courts are bound by the force of an appellate ruling even when the Court of Appeals has not issued its mandate. If this were true, however, Fed. R. App. P. 41(b) and Circuit Rule 41(a)(2) which authorize Courts of Appeals to stay their mandates, would be rendered meaningless. These appellate rules exist for a reason, allowing courts to take important legal developments into account that arise between the time that an opinion is written and after a denial of certiorari. *See Alphin* v. *Henson*, 552 F.2d 1033, 1034-35 (4th Cir.) (noting that its "control over a judgment of our court continues until our mandate has issued" and amending its decision to conform to an intervening change in the law), *cert. denied*, 434 U.S. 823 (1977); *First Gibraltar Bank, FSB* v. *Morales*, 42 F.3d 895, 897 (5th Cir. 1995) (same); *Bryant* v. *Ford Motor Co.*, 886 F.2d 1526, 1529-30 (9th Cir.1989) (affirming power of the circuit court to stay the mandate and stating that "where the mandate has not issued the availability of appeal has not yet been exhausted."), *cert. denied*, 493 U.S. 1076 (1990). As discussed in Petitioners' opening brief, Congress is actively

protect the interests of detainees, or should the Government act to infringe upon the detainees' rights to due process, Petitioners will be entitled to renew their challenges in court, including in the U.S. Supreme Court. So, rather than a mark of definitive finality, the statements respecting the certiorari denial make clear that the Court simply followed the time-honored tradition of requiring exhaustion of other potential remedies before reaching the merits of a complicated constitutional matter. *Boumediene*, 549 U.S. __, 127 S.Ct. at 1478 (Stevens, J. and Kennedy, J.) (citing caselaw regarding exhaustion of remedies and refraining from deciding constitutional questions where possible). In no way did the Court suggest that the matter was resolved forever. Rather, the strong suggestion left by a majority of the Court was that the issue would at a minimum be deferred, but certainly not denied.

As the Court is aware, the Supreme Court has twice overruled decisions of the D.C. Circuit in matters pertaining to the legal rights of Guantanamo Bay prisoners. And while the Supreme Court has not yet overruled the Circuit's two-to-one opinion in *Boumediene,* Respondents overestimate the purported finality of that decision by failing to heed the clear message sent by the highly unusual statements of five members of the Court accompanying the certiorari denial. Indeed, in the pivotal statement written by Justices Stevens and Kennedy denying certiorari, it should not go unnoticed that they cite the portions of *Rasul* that directly undermine the Circuit Court's rationale in *Boumediene*. Therefore, in light of the questionable lasting impact of the split *Boumediene* ruling, the

---

seeking to restore the right to habeas corpus, Pet. Mem. at 5 n.2, thus it would be especially inappropriate to apply the law of *Boumediene* to these cases at this time.

unequivocal holding of a higher court in *Rasul v. Bush*, 542 U.S. 466 (2004), and the fact that five Justices of the Supreme Court agree that, at the very least, the protections guaranteed by the writ of habeas corpus must be provided to detainees, whether through habeas itself or an alternative scheme, the Government's argument that the ruling of the *Boumediene* court is the settled law of the circuit is overly facile, if not outright wrong.

Simply put, the law regarding Petitioners' rights to habeas corpus is far from settled. Hence, it is particularly appropriate for this Court to stay this case and preserve the status quo until that question can be definitively resolved. *United States v. United Mine Workers*, 330 U.S. 258 (1947), is instructive in this regard. In *United Mine Workers*, defendants, a union and union leader, argued that federal law prevented the district court from entering an order enjoining the defendants from striking, but the court entered an injunction in order to prevent a nationwide strike pending further consideration of the lawfulness of its authority to grant injunctive relief. The Supreme Court found that "the District Court unquestionably had the power to issue a restraining order for the purpose of preserving existing conditions pending a decision upon its own jurisdiction." *Id.* at 290.

The Respondents' objections to the stay-and-abey model approved by the Supreme Court in *Rhines v. Weber*, 544 U.S. 269, 276 (2005), are simply not credible. The argument that the exhaustion rules applicable to habeas corpus petitions seeking to reverse state court judgments cannot apply to these cases blatantly ignores the fact that at least two members of the Supreme Court endorsed precisely that model in the *Boumediene* certiorari denial itself. *See Boumediene*, 549 U.S. __, 127 S. Ct. at 1479

(noting that the Court's "practice requir[es] the exhaustion of available remedies as a precondition to accepting jurisdiction over writs of habeas corpus").

Petitioners have more than met all of the elements necessary to justify a stay. Petitioners have established good cause for failure to exhaust remedies under the DTA, namely, that the DTA remedy did not exist when Petitioners filed their habeas petitions.[3] Petitioners have also established that their claims are potentially meritorious. As discussed above, in dissenting from the certiorari denial, three Supreme Court Justices raised serious questions about whether the Court of Appeals incorrectly applied Supreme Court precedent. *Boumediene*, 549 U.S. __, 127 S. Ct. at 1479. And, as discussed in Petitioners' main brief, in their statement concerning the denial of certiorari, Justices Stevens and Kennedy tellingly cited to the portion of their opinions in *Rasul* which directly undermines the *Boumediene* majority view that the United States Naval Station at Guantánamo Bay is not within the territorial jurisdiction of the United States. Pet. Mem. at 4. Finally, Petitioners have not engaged in dilatory tactics. To the contrary, it was Respondents themselves who over two years ago sought and secured a stay of these proceedings, much to the dismay and disappointment of Petitioners, who have been literally begging for a day in court for five years. Thus, to deny a stay now would only add insult to injury and further prejudice Petitioners.

---

[3] Although the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 ("MCA"), was passed on October 17, 2006, amending the DTA to apply retroactively to all pending habeas petitions, the constitutionality of that act was not adjudicated by any court until February 20, 2007. Moreover, the Supreme Court's denial of certiorari was only decided on April 2, 2007.

## II. THIS COURT MAY TRANSFER PETITIONERS' CASES TO THE COURT OF APPEALS PURSUANT TO 28 U.S.C. § 1631

As set forth in Petitioners' moving papers, Pet Mem. at 21-22, should the Court decide that it lacks jurisdiction to stay the case and hold it in abeyance, it may transfer these cases pursuant to Section 1631.

First, the Government itself has taken the position both in the Court of Appeals and in this Court that the prisoners' habeas corpus cases should be transferred pursuant to Section 1631, and has cited legislative history of the DTA that suggests that it supports such a transfer. *E.g.*, Reply of Federal Parties Addressing the Detainee Treatment Act of 2005, at 28-31, *Al Odah v. United States*, Nos. 05-5064, 05-5095 through 05-5116, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 17, 2006) (citing comments of, *inter alia*, Senator Graham); Respondents' Reply in Support of Motion to Dismiss, at 45 n.24, *Hamdan v. Rumsfeld*, 04 Civ. 1519 (JR) (D.D.C. Dec. 8, 2006).

Second, if the Court finds that the first prong of the test is met—lack of jurisdiction in the original court—it should also find that Petitioners clearly meet the other two: the transfer would be in the interests of justice and the transfer is to a court where the action could have been brought at the time of filing or notice. The interests of justice are clearly satisfied for the reasons discussed above. Although the Government argues that the third prong is not met as the Court of Appeals would not have had jurisdiction over the habeas petitions at the time they were filed, at the time this case was filed, the transferee court did, indeed, have appellate jurisdiction over the habeas corpus

petitions. For these reasons, at a minimum, this case should be transferred to the Court of Appeals.

For all of the reasons described above, it is in the interest of justice for this Court to ensure that the current orders remain in place, thus maintaining counsel's unbroken access to evidence needed to prepare the DTA petitions and affording Petitioners an opportunity to participate in the preparation of their DTA submissions. It is also in the interest of justice to preserve the status quo where the Court of Appeals has jurisdiction over the same general subject matters, and must consider issues of client access and the scope of merits review, but has not yet had the opportunity to act. Under the circumstances, including the uncertain and shifting scope of federal court jurisdiction, this Court, at a minimum, should ensure that there is no gap in governing procedures until the Court of Appeals can fully consider these matters.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that this Court maintain the current stay entered in Petitioners' habeas proceedings and hold the proceedings in abeyance pending Petitioners' diligent exhaustion of remedies in the Court of Appeals; or, in the alternative, transfer this habeas action to the Court of Appeals pursuant to 28 U.S.C. § 1631 for consolidation with Petitioners' DTA actions to be filed forthwith.

Respectfully submitted,

/s/ Julia Tarver Mason
Julia Tarver Mason

Martin Flumenbaum
Jennifer Ching
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Tel: (212) 373-3000
Fax: (212) 757-3900

*Counsel for Petitioners*